687 P.2d 939

**SOLAR–WEST, INC., an Arizona corporation, Plaintiff/Appellee/Cross-Appellant,**

v.

**Ivan FALK and Reva Falk, husband and wife; Sun Valley Solar Systems, Inc., an Arizona corporation, Defendants/Appellants/Cross-Appellees.**

**No. 2 CA–CIV 4882.**

Court of Appeals of Arizona, Division 2.

June 19, 1984.

Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by John Gabroy, Tucson, for plaintiff/appellee/cross-appellant.

Leighton H. Rockafellow, Tucson, for defendants/appellants/cross-appellees.

## OPINION

HATHAWAY, Judge.

This case raises five issues for consideration: (1) Whether defendant/appellant Falk had authority to issue a money-back guarantee to a customer of plaintiff Solar-West, Inc.; (2) whether Falk is liable for losses suffered by Solar-West allegedly resulting from the poor design of a solar-heating system installed in the house of a second customer; (3) whether the parties' termination letter operated as an accord and satisfaction and a bar to appellee's cause of action; (4) whether Falk is liable for defaming Solar-West and its owners, and (5) whether attorney's fees were properly awarded by the trial court. We review the facts in a light most favorable to sustaining the trial court's judgment.

On March 1, 1980, Ivan and Reva Falk, owners of Sun Valley Solar Systems, Inc., entered a stock-purchase agreement with Larry and Denice Lambert, majority stockholders of Solar-West, Inc. As the names suggest, Sun Valley and Solar West are in the business of selling and installing solar heating systems. The agreement provided that the Falks made three $5,000 payments during 1980, receiving 90 shares of Solar-West for each payment. With the final payment on September 1, 1980, the Falks would become owners of one-half of the company and would acquire 50% interest in an option held by the company to repurchase some outstanding shares. The agreement was signed by all parties and the first installment was paid by the Falks for which they received certificates representing 90 shares of stock. There are no articles of incorporation or by-laws in the record and no shareholders or directors meetings were held to elect officers or delegate duties.

Ivan Falk and Larry Lambert agreed that Falk would be a company representative and salesman, authorized to sell solar heating systems and supervise installation. This agreement was based on Falk's experience with active solar heating systems and Lambert's existing marketing system. They also agreed that Falk would discuss with the Lamberts any arrangements with other parties which had financial consequences for the corporation above and beyond the quotation of standard system prices. Out of these general agreements arose the three specific situations which formed the basis of plaintiff/appellee's complaint.

The first began on March 19, 1980, when Falk entered a contract with Gold Crest Mobile Homes for the installation of a solar heating system. Falk and Lambert agreed to take a system out of inventory and use it as a display model in a mobile home. They agreed to provide the system at a reduced cost to James Wilson, owner of Gold Crest, in exchange for the use of a mobile home for display purposes and as an incentive to Wilson to help sell the system. The contract was signed by Falk as "owner" of Solar-West and Wilson on the same day the system was installed. On April 7, without Lambert's knowledge, Falk agreed to refund all of Wilson's money if, by September 1, 1980, the display had not become a "workable or profitable situation." In June 1980, Falk and Lambert decided to terminate their stock-purchase agreement and finalized the dissolution with a letter signed by the parties on August 15. Sometime in October, Wilson went to Lambert with his money-back guarantee and said that he wanted to return the solar system because the purchasers of the mobile home displaying the system did not want the solar collector. Lambert, surprised by the request, agreed to the refund to avoid a lawsuit.

The plaintiff/appellee argued successfully at trial that the money-back guarantee issued by Falk to Wilson was done without authority and that Falk should be liable for losses incurred as a result. Appellant Falk argues here that his actions were in good faith and good business judgment. He also urges us to find that he acted within his authority when he signed the money-back guarantee. We affirm the lower court's determination on this issue.

■■ Initially, we note that the "business judgment rule" is applied to decisions and actions of corporate management, providing some latitude for management's actions in their capacity as corporate fiduciaries. See *Tovrea Land and Cattle Company v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966). This latitude has also been given to decisions by majority stockholders. See *Shivers v. Amerco*, 670 F.2d 826 (9th Cir.1982). Since appellant is neither a corporate director, officer or majority shareholder, he does not benefit from the protection afforded by the rule. Thus, the determinative question is whether appellant had authority to issue the money-back guarantee to Wilson.

■■ Appellant's job description required that he sell solar heating systems and represent the company as a salesman and installation supervisor. Appellant admitted

at trial that his authority in the sales area extended to quoting prices for equipment and systems but that anything posing a financial consequence to the corporation was to be discussed with the Lamberts. There was ample evidence from which the trial court could find that Falk did not discuss the money-back guarantee with the Lamberts before issuing it, that they knew nothing about the guarantee until Wilson presented it to Larry Lambert and that issuing the guarantee exceeded Falk's authority. Falk argues, however, that Lambert knew that Falk was representing himself to Wilson as an owner of Solar-West and that this somehow authorized Falk's issuance of the guarantee. We see no ratification of Falk's actions simply because Lambert acquiesced in Falk's representations about company ownership. Although technically Falk was a part owner, the representation to Wilson was not entirely accurate. This did not extend to Falk the authority to give Wilson a refund guarantee without first getting the Lambert's consent. Falk is therefore liable for damages arising from his breach of duty. Restatement (Second) of Agency, § 401.

The second transaction involved the design and installation of an active solar heating system in the new house of Neal Long. Long contracted with Falk on March 28, 1980, for the new system. At some time shortly before or after the contract was signed, Long delivered the building plans for his new house to Lambert, who filed them with the contract. Falk, brought into Solar-West for his expertise in active solar systems, was responsible for designing and supervising the installation of the system. The plumber on this project for Solar-West was James Jaster, a former shareholder in the company, who testified that he and Lambert discovered that the design of the system could not possibly achieve Long's goals. Falk apparently told them to continue installation as he had directed without heeding Jaster's advice. On June 18, 1980, before he had adequately tested the system, Long signed a completion certificate indicating he was satisfied with the installation and that he owed a balance of $2,473.12. By August, Long was experiencing difficulties with the system. After some negotiating with Lambert about modifying the system, Long requested that Lambert remove the system and refund his money, and Lambert complied. Plaintiff/appellee successfully claimed at trial that the system was negligently designed by Falk in breach of his duty and was awarded damages for the cost of installation and removal of the system and the diminution in value of the solar heating equipment.

Appellant claims on appeal that he was an employee of Solar-West and not responsible for any negligence he committed while acting within the scope of his employment. He argues further that he should not be required to indemnify a corporation whose major shareholder voluntarily refunds a customer's money to retain its goodwill. Appellant's arguments are misplaced.

An agent who is a servant or employee of a principal is liable for the failure to exercise reasonable skill in the exercise of its duties which results in injury to the principal or third party. See *Borbon v. City of Tucson*, 27 Ariz.App. 550, 556 P.2d 1153 (1976); Restatement (Second) of Agency, §§ 401, 429. Appellant was a servant of the corporation, see Restatement (Second) of Agency, § 2, and was liable to appellee if his design was negligent because his negligence proximately caused appellee's loss. Appellant argues that, regardless of the reasonableness of the design, Larry Lambert voluntarily gave Long a full refund, thus precluding Lambert's recovery from appellant. We disagree.

Appellant ignores the trial court's finding that his negligent design caused the system not to work as Long wanted, which in turn precipitated Long's dissatisfaction and ultimately the refund. Even if Lambert's actions here were solely to protect the goodwill of his business, an issue we do not decide, the entire incident was the proximate result of appellant's poor design.

We do not find Lambert was a volunteer in this instance. Cf., *Cobb v. Osman*, 83 Nev. 415, 433 P.2d 259 (1967).

■ Before deciding the third issue, we note appellant's contention that Sun Valley Solar Systems, Inc., appellants' company, should not be liable for any damages arising from this case. We agree. The acts committed by appellant were done on his own behalf and not in his capacity as owner or representative of Sun Valley. There are no allegations and there is no evidence suggesting Sun Valley's direct or indirect involvement in either the Gold Crest or Long situations. Thus, the damages awarded should be against appellants personally and not against Sun Valley. The judgment is modified to that extent.

■ Appellant also suggests that Lambert failed to mitigate the damages arising from the Long and Gold Crest situations and that the damage awards for those cases should be reduced so as to reflect the salvage value of the reclaimed solar heating material. The burden of proving that mitigation was reasonably possible but not reasonably attempted is on the party in breach. *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 603 P.2d 513 (App.1979). The burden requires a showing that the non-breaching party failed to take reasonable actions to mitigate. Extraordinary or risky actions are not required of the non-breaching party "unless it would be unreasonable to fail to take those actions." 124 Ariz. at 255, 603 P.2d at 526.

■ The evidence reflects a conflict both in the estimated salvage value of the reclaimed parts and the available market for used solar heating equipment. Lambert testified that the various solar panels and storage tanks probably had some salvage value but that they all needed some restoration before a resale could occur. He also questioned the existence of a market for used solar heating equipment. Jaster, the plumber, testified that no market for used solar panels existed and that the storage tanks taken from the Long house were

damaged but that they might have had some resale value. Finally, Falk testified that the solar equipment had considerable salvage value and that he would have purchased at least the equipment from the Long house had it been offered to him. The trial court presumably considered all of this evidence when it calculated the damages to be awarded. We find no abuse of discretion or mistake in calculation of damages by the trial court and reject appellant's mitigation of damages argument.

The next issue arises from the letter, signed by the Falks and the Lamberts, terminating the business relationship between the parties. The letter on Solar-West, Inc. stationery, dated June 27, 1980, and signed by the Falks on August 15, 1980, reads as follows:

"In today's talk we have agreed that Solar-West, Inc. has not proven a successful investment for you, and you do not choose to purchase the rest of the stock you agreed to buy. Since our expected success in having you join us has also been a disappointment/expense for us, the ninety (90) shares for which you paid $5,000.00 are no longer of such value to you and have no such value to us. Therefore, if we are to receive the shares back from you, we have agreed to pay you the balance remaining in the Neil Long account in the amount of $2473.12 in settlement of our business relationship with you. Your signatures below confirm your acceptance of this and your decision to return the ninety (90) shares to us when this amount has been paid in full."

Appellant argues that this letter operates as an accord and satisfaction and that appellee's claims were barred when the letter was signed. We disagree.

■ "An accord and satisfaction is a subsequent agreement to take something other than the original agreement." *Arizona Cotton Ginning Co. v. Nichols*, 9 Ariz.App. 493, 495, 454 P.2d 163, 165 (1969). It is a method of discharging a contract or cause of action whereby the new agreement, or accord, is substituted

for the old and the performance of the accord is the satisfaction. *Green v. Huber*, 66 Ariz. 116, 184 P.2d 662 (1947). The June 27 letter is not an accord and satisfaction of the claim in dispute here for two reasons. First, the original agreement for which this letter was a substitute established only the nature of the business relationship, the schedule of the stock purchases, the number of shares to be purchased and the price. The June 27 letter was a termination of that original agreement, providing for the repurchase of some shares and the invalidation of others. It was not an agreement which contemplated or accounted for debts arising from unauthorized acts or breaches of duty.

Second, the termination letter must reflect a meeting of the minds, among other things, in order to be a valid accord and satisfaction. *Vance v. Hammer*, 105 Ariz. 317, 464 P.2d 340 (1970). It was impossible for this letter to have reflected a meeting of the minds on debts that arose months after the accord was formed. *Plywood Marketing Associates v. Astoria Plywood Corp.*, 16 Wash.App. 566, 558 P.2d 283 (1976). The language in the letter stating that this was a "settlement of our business relationship" must reasonably be interpreted as a stock buy-out, terminating the stock purchase agreement and providing that any monies due thereunder for stock was to be paid for with a debt outstanding to the company and collectible by appellant. Any resolution of unknown future debts incurred by Solar-West was not contemplated by this agreement.

We next come to the cross-appeal, which questions the trial court's determination that Solar-West was not defamed by appellant. This situation began when Terry Guilloz answered an advertisement to apply for the salesman's training program at Solar-West. On October 10, 1980, at the end of the course, Guilloz was encouraged to sign up as a salesman, which offer he refused, and to buy a solar heating system, which he did. He made a down payment of $300 for the system and had three days to rescind. The next day, October 11, Guilloz attended a solar power fair at the Amphi Plaza in Tucson, at which appellant was displaying the products and services of Sun Valley Solar Systems. At the fair, Guilloz struck up a conversation with appellant about different solar companies and various solar installations, during which appellant mentioned his partnership with Lambert. According to Guilloz, appellant said he had lost a lot of money as Lambert's partner, that Lambert's father-in-law "wined and dined" appellant several times to extract more money from him, that Solar-West had not been invited to join the Southern Arizona Home Builders Association, that two installations performed by Lambert (the Gold Crest and Long installations) were bad, that Solar-West was not completely "above-board" or legal and that the products sold by Solar-West were inferior. At several points during the conversation, appellant indicated to Guilloz that he should not be saying these things. After this discussion, Guilloz called Lambert and rescinded his contract. Appellant testified at trial, denying that he made any of these statements at the fair. He did indicate that he may have made them at a later date but that he couldn't recall precisely what was said or when. The trial court denied Solar-West's claim for defamation.

The conflicting testimony of Falk, Guilloz and Lambert was weighed by the trial court. Where, as here, the judgment is based on the weight of the evidence, we must be able to determine on review that it was clearly erroneous. The trial court was in a better position to make this judgment and we cannot say it was clearly erroneous.

Finally, both parties seek an award of attorney's fees, an award denied by the trial court. In *Wheel Estate Corporation v. Webb*, 139 Ariz. 506, 679 P.2d 529 (App. 1983), we listed several factors which might influence a trial court when deciding whether to award prevailing attorney's fees as these factors were enumerated by Division One in *Grand Real Estate, Inc. v. Sirignano*, 139 Ariz. 8, 676 P.2d 642 (App. 1983). Naturally, these factors only apply when a contract or statute provides for

them.  See *Bouldin v. Turek*, 125 Ariz. 77, 607 P.2d 954 (1979).

A.R.S. § 12–341.01 permits the awarding of attorney's fees in contract cases when, in the trial court's judgment, such an award is warranted.  The award is discretionary and we will not substitute our discretion for that of the trial court where the record contains a reasonable basis for the exercise of that discretion.  See *Wheel Estate Corporation v. Webb*, supra.  We see no reason to disturb the trial court's discretion on this issue either.  Only one of the three cases tried to the court involved a breach of contract.  Neither party was entirely successful at trial and two of the four questions on appeal raise tort issues.  We see no abuse of the court's discretion in requiring each party to sustain its own costs of litigation.

BIRDSALL, C.J., and HOWARD, J., concur.