[No. 11570–7–I.   Division One.   April 1, 1985.]

SHARON L. PRATER, *Appellant,* v. THE CITY OF
KENT, ET AL, *Respondents.*

*Gary E. Hall,* for appellant.

*P. Stephen DiJulio, City Attorney,* for respondents.

RINGOLD, J.—Sharon Prater appeals the judgment dismissing her action against the City of Kent. She contends that the trial court erred in dismissing her claim of retaliatory discharge and in finding that the City did not discriminate against her on the basis of sex or handicap. She also assigns error to the finding that the City had a legitimate reason for terminating her employment, asserting that the court failed to consider whether the articulated reason was pretextual. We affirm.

Sharon Prater was hired by the Kent Water Department in November 1976, through a CETA[1] program. She testified at trial that she complained to her supervisors that she was not given equal training and fieldwork opportunities and was required to do "women's work" such as sweeping and washing dishes. In March 1977, while working on a field assignment, Prater operated a jackhammer without ear protection. She suffered some hearing loss and voice problems after this incident, and filed a WISHA[2] complaint about the lack of ear protectors. The Department foreman was ultimately placed on probation as a result of this complaint.

Prater was treated for the hearing loss by her doctor, and received the City's permission to be absent from work through May 31, 1977. Prater initially gave the City a "time loss card" completed by her doctor for the Department of Labor and Industries, stating that Prater was not able to return to work, was under treatment, and the extent of her disability was unknown. On June 16, 1977, she gave the personnel office a letter from her doctor stating in full: "Sharon Prater has been under my care since 13 May 1977 and has been unable to work since that time. She was

---

[1]The Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.*

[2]Washington Industrial Safety and Health Act of 1973, RCW 49.17.

undergoing evaluation for hearing loss plus should not work in a noisy environment in the future."

Prater was informed in a June 20, 1977 letter from Gerald Winkle, the personnel director, that her employment was terminated because of her failure to provide "positive information" about her "extended absence from work." DLI notified Winkle on August 9, 1977, that Prater was released to return to work as of July 18, 1977, subject to the condition that she not work in a "noisy environment", or "strain her voice". On September 19, 1977, Winkle wrote to Prater requesting that she provide her medical records to the City so they could place her in an appropriate position. Prater did not supply these records.

Prater was not reinstated in the Water Department job. She filed this action alleging sex discrimination in the terms and conditions of her employment, retaliatory discharge for filing a WISHA complaint, and discrimination against the handicapped, contending that her hearing problem is a handicap for the purposes of RCW 49.60. The court dismissed the retaliatory discharge complaint at the close of the plaintiff's evidence, and found in favor of the City at the close of the defendant's case. This appeal follows.

## Retaliatory Discharge

We first consider whether the trial court erred in dismissing the claim of retaliatory discharge. Prater argues that she was fired for complaining about preferential job assignments for males, and for filing the WISHA complaint. She contends this violates RCW 49.60.210, which makes it an unfair practice to discharge an employee for opposing practices forbidden by the law against discrimination. She also argues that she established a prima facie case of retaliation, and that the court erred in dismissing this part of the complaint at the close of her case. *Kinney v. Bauch,* 23 Wn. App. 88, 95, 596 P.2d 1074 (1979), *review denied,* 92 Wn.2d 1032 (1979).

The City moved to dismiss all claims at the close of the plaintiff's evidence. Prater's attorney said in response:

"As to the motion to dismiss the WISHA portion of the Complaint, I think our brief concedes that the statutory prerequisites were not followed. I have no objection to that." The court then granted the motion to dismiss the allegation of retaliatory discharge. Prater may not assign error to the dismissal because her counsel agreed that it was proper. Invited error precludes judicial review. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

Neither the original nor the amended complaint alleges retaliatory discharge for complaining about sex discrimination. While CR 15(b) authorizes amending a complaint to conform to evidence and issues presented and argued at trial, it is not appropriate to amend the complaint here. Retaliatory discharge for complaining about sex discrimination is a separate cause of action which was not pleaded below. There was no special evidence admitted on this issue, and the only retaliatory discharge claim made was dismissed with the consent of the plaintiff's attorney. The trial court did not consider or rule on retaliatory discharge after dismissing that portion of the complaint. Manifest constitutional error may be raised for the first time on review. RAP 2.5. New causes of action based on constitutional claims may not, however, be raised for the first time on appeal. Having failed to raise this claim below, Prater may not now argue it on review. *Muck v. Snohomish Cy. PUD 1*, 41 Wn.2d 81, 88, 247 P.2d 233 (1952).

### FINDINGS ON DISCRIMINATION AND PRETEXT

Prater next argues that the court erred in finding there was no discrimination, and in failing to consider whether the alleged reason for discharge was a mere pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). Further, she contends the court failed to consider whether the City failed to make reasonable accommodation for her handicap, as required by WAC 162–

22–080. *Holland v. Boeing Co.,* 90 Wn.2d 384, 583 P.2d 621 (1978). She argues that public policy requires a ruling that even a discharge only partially motivated by discrimination violates the state constitution and RCW 49.60. Prater asks that the case be remanded for entry of findings on these issues.

■■ The United States Supreme Court has outlined a 3–part framework for analyzing employment discrimination cases which has been followed by the Washington courts. *Hollingsworth v. Washington Mut. Sav. Bank,* 37 Wn. App. 386, 391, 681 P.2d 845 (1984). First, the plaintiff must establish a prima facie case of discrimination; second, the burden shifts to the employer to articulate a legitimate reason for discharge; and third, the plaintiff must then establish that the articulated reason is pretextual. *McDonnell Douglas,* at 804–05. The United States Supreme Court recently discussed the *McDonnell–Burdine* analysis, stating:

> when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell–Burdine* presumption "drops from the case," 450 U. S., at 255, n. 10, and "the factual inquiry proceeds to a new level of specificity." *Id.,* at 255. . . .
>
> The "factual inquiry" in a Title VII case is "[whether] the defendant intentionally discriminated against the plaintiff." *Burdine, supra,* at 253.

(Footnote omitted.) *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714–15, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983).

*Aikens* makes clear that the *McDonnell–Burdine* framework is simply an analytical tool, a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Aikens,* at 715 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978)). "Where a case

has been fully tried on the merits, framing the issue in terms of whether the parties met one of the steps of analysis unnecessarily evades the ultimate question of discrimination." *Hollingsworth,* at 392. At the close of the case, after hearing evidence from both parties, the court should proceed directly to the question of whether there was intentional discrimination. *Aikens,* at 715–16.

Here, the court denied the City's motion to dismiss at the close of the plaintiff's evidence. This is equivalent to a ruling that Prater established a prima facie case. The City was then required to articulate a legitimate, nondiscriminatory reason for discharge. The City put on evidence showing that Prater was discharged for failure to provide requested medical records allegedly necessary to place her in a position that would not endanger her health. The burden went back to Prater to establish that this reason was pretextual.

The trial court heard evidence from both sides and was in a position to decide the "ultimate factual issue": whether the City discriminated against Prater on the basis of either sex or a handicap. The court entered written findings that:

1. The information provided by plaintiff to defendants relative to her physical condition was insufficient to allow defendants to make a reasonable determination as to what sort of work plaintiff could do which would not cause further injury to plaintiff.

2. Defendant's actions in requesting further information by way of medical authorizations or further clarification by plaintiff's physician was reasonable and proper under the circumstances.

The court entered the conclusion of law that "There is no competent evidence of any discrimination against the plaintiff." Although denominated a conclusion of law, this is a finding of fact, and will be treated as such on appeal. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 267, 501 P.2d 290 (1972), *appeal dismissed,* 411 U.S. 945 (1973).

The court need not enter findings specifically stating that the plaintiff established a prima facie case which was rebutted by the defendant. *Cf. Aikens; Hollingsworth.* The trial court findings sufficiently establish that the trial judge

considered all the evidence and determined that the articulated reason for discharge was legitimate. The court did not find intentional discrimination by the City, and found that the City's request for further medical information was reasonable under the circumstances. This implies that the court found the City's reason for discharge was nonpretextual.

The only remaining issue is, therefore, whether these findings are supported by substantial evidence. Findings supported by substantial evidence will not be reversed on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 615 P.2d 1279 (1980). The City presented testimony that the personnel department was willing to rehire Prater under CETA, but wanted to clarify her medical status to avoid placing her in a hazardous position. This argument is supported by letters from the personnel department to Prater. Although Prater was advised she was discharged in June 1977, the City continued to correspond with her until March 1978, asking that she clarify her status. In a letter dated September 19, 1977, the personnel director stated in part:

> There is no question, judging from your past work performance, that you are capable of doing the job, only that the City is concerned about your physical well being.
>
> . . .
> Provided it is determined physically safe for you to return to your position with the Water Department, you may do so at your earliest convenience.

Other letters in the record indicate that Prater agreed to supply the requested information, but failed to do so. The medical excuses submitted by Prater were vague and indefinite, saying only that she should "not work in a noisy environment." Prater did not supply sufficient medical information to evaluate her condition.

Prater's allegations of being given "women's work" and not being sent on fieldwork were unsupported. Her co-workers testified that she was treated equally, and the City introduced a log showing that Prater was sent on 19 field

assignments in 2 months, not 2 assignments as she had testified. The finding that there was no discrimination is supported by substantial evidence.

Because the court found there was no intentional discrimination, it is unnecessary to determine whether public policy requires a ruling that a discharge partially motivated by discriminatory animus violates RCW 49.60. Prater's argument that the City failed to make reasonable accommodation for her handicap need not be considered in light of the court's finding that Prater did not provide enough information for the City to evaluate her condition and place her in another position.

The judgment of dismissal is affirmed.

CORBETT, C.J., and WEBSTER, J., concur.