[No. 18265–0–I.   Division One.   July 8, 1987.]

PARA–MEDICAL LEASING, INC., *Appellant,* v. TODD
HANGEN, ET AL, *Respondents.*

*Hal Thurston, Hugh Lewis,* and *Simonarson, Visser, Zender & Thurston,* for appellant.

*Henry S. Holte, Lee B. Tinney,* and *Anderson, Hunter, Dewell, Baker & Collins,* for respondents.

WEBSTER, J.—Appellant Para–Medical Leasing, Inc., sued respondent Todd Hangen for negligent mismanagement of Para–Medical's business. The case was tried to the bench and Hangen prevailed following his motion for dismissal. Para–Medical appeals, claiming that the court erred (1) by applying the business judgment rule; (2) by finding that Hangen was competent; and (3) by concluding that Para–Medical had failed to establish Hangen's professional malpractice, breach of fiduciary duty, and breach of contract. We affirm.

In the summer of 1981 Dr. Gene Mason, the sole shareholder and director of Para–Medical, hired Todd Hangen, a certified public accountant, to act as interim manager for Para–Medical while Dr. Mason took a 10–month leave of absence to teach in Africa. Para–Medical is a small vehicle and equipment leasing company, and Hangen had been its accountant for several years. According to Dr. Mason's testimony at trial, Hangen was asked to bank money, to send out statements, to write checks, to inquire into accounts that were more than a week in default, to keep the books and accounting, and to do a periodic analysis of the company. Hangen was told that the work would entail approximately 15 hours a month and that he would be compensated with the use of a Corvette automobile.

Prior to Dr. Mason's departure, he gave Hangen a handwritten list of duties and a procedures manual for reference in handling the routine matters of the business. The 4–page manual contained procedures on writing leases, figuring lease payoffs, and extending leases. It also contained Dr. Mason's address in Africa and the phone numbers of Dr. Mason's wife and Raymond Rairdon, the manager of a large leasing company in Seattle. Dr. Mason told Hangen that

these people were available if questions or difficulties should arise.

Bank records indicated that Hangen was given both signature authority on Para–Medical's bank accounts and borrowing authority on behalf of Para–Medical. On these records Hangen was designated as "vice–president." However, Dr. Mason testified that he never intended to give Hangen borrowing authority and that he never told Hangen he could borrow money.

Dr. Mason also testified that Hangen was never told that he could enter into new leases. He assumed that Hangen would not enter into new leases, but did not specifically forbid it. Hangen, on the other hand, testified that he had verbal assurances from Dr. Mason that he could write a lease if it became necessary. He also believed that he could enter new leases based on information in the manual and based on his own general business experience.

Dr. Mason left for Africa on or about September 1, 1981. After he left Hangen entered into two transactions with an existing customer of Para–Medical, Canal Commercial Corporation (CCC). Between October 1980 and July 1981 CCC had sustained business losses of $43,000 and had lost a major customer. Moreover, at the time of the first transaction, CCC was leasing eight pieces of equipment from Para–Medical and neither the September 1981 nor the October 1981 payments had been made. Hangen never contacted Dr. Mason, Raymond Rairdon, or Dr. Mason's wife prior to entering into these transactions.

The first transaction was for a GMC Astro truck, which cost $27,850. Hangen borrowed $25,000 on Para–Medical's account to buy the truck. However, in preparing the lease, he did not follow the procedures in the manual. Hangen stated that he wrote CCC's lease for a reduced profit to continue its business relationship with Para–Medical and to keep CCC from going "belly up." In preparing the lease, Hangen required no documentation concerning CCC's financial condition. He testified that no documentation was present in CCC's file on their previous leases and very little

documentation was on file for any of Para–Medical's other customers. Dr. Mason testified that the total profit that Para–Medical stood to realize from this lease was $613 rather than $8,000 had the manual been followed.

CCC made only one payment on the GMC Astro lease and failed to pay its existing Para–Medical leases. As of December 15, 1981, the total amount of CCC unpaid leases was over $8,000.

In mid–December 1981 Hangen entered the second transaction with CCC. He agreed to refinance pre–existing leases on two pieces of equipment that CCC was leasing from Para–Medical. This equipment included a "T–weld" trailer and a "low–boy" trailer. CCC had done some repairs on the trailers, and, according to testimony by the former president of CCC, the value of the T–weld trailer had increased from $6,250 to $12,000, and the value of the low–boy trailer had increased from $3,500 to $9,000. Under the proposed refinance CCC would also sell and lease back from Para–Medical an office trailer valued by CCC at $12,000. In return for its work on the trailers and the sale and lease–back arrangement, Hangen paid CCC $22,000, which he had borrowed on Para–Medical's credit. CCC then paid Para–Medical $5,200 as partial payment on its arrearages. Although a new lease for this transaction was prepared by Hangen, it was never signed by CCC, and CCC never made a payment on the new lease.

Dr. Mason did not learn of these two transactions until he returned from Africa. He subsequently obtained $4,500 in payments from CCC. He then sued CCC, repossessed the equipment, and sold the GMC Astro truck and the office trailer at auction for $7,500 and $1,400 respectively.

Dr. Mason sued Hangen, alleging professional malpractice, breach of fiduciary duty, and breach of contract. On March 25, 1986, the court issued a letter ruling in favor of Hangen. Para–Medical appeals, contending that the court erred by applying the business judgment rule; by finding Hangen competent; and by concluding that Para–Medical had failed to establish professional malpractice, breach of

fiduciary duty, and breach of contract by Hangen.

## BUSINESS JUDGMENT RULE

Para–Medical first challenges that portion of the court's conclusion in its letter opinion, which states:

> I have concluded that the "business judgment rule" is the law in the State of Washington, and that the case of *Schwarzmann v. Apartment Owners*, 33 Wn. App. 397 (1982), and particularly *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489 (1975) control the outcome in the case before me.

Considering its argument, we note that Para–Medical also appears to challenge conclusion of law 3. We will, therefore, consider it on review. RAP 10.3(g); *Ruddach v. Don Johnston Ford, Inc.*, 97 Wn.2d 277, 281–82, 644 P.2d 671 (1982). Conclusion of law 3 reads:

> The "business judgment rule" in Washington immunizes the defendant for his management decisions, which were undertaken within the power and authority of management, as authorized by the plaintiff, and which were made in good faith.

On appeal our review is limited to whether substantial evidence supports the findings of fact and in turn whether the findings of fact support the conclusions of law. *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 82, 701 P.2d 1114 (1985); *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). We find that unchallenged findings of fact 2, 3 and 4 support the two challenged conclusions of law. Unchallenged findings become verities on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). These findings read as follows:

> 2. The plaintiff, Para–Medical Leasing, Inc., by and through its president and sole shareholder, Dr. Mason, authorized the defendant to manage the business of the plaintiff corporation during Dr. Mason's absence from the country.
>
> 3. The defendant's management responsibilities included authorization to enter into equipment leases and extensions on behalf of the plaintiff corporation, such as

those undertaken with the lessee, Canal Commercial Corporation; and to borrow funds on behalf of the plaintiff corporation.

4. The defendant's actions in connection with the transactions involving the lessee, Canal Commercial Corporation, were made in good faith and without any corrupt motives, and were intended solely to benefit the plaintiff corporation.

In Washington the business judgment rule has been adopted as follows:

> It is too well settled to admit of controversy that ordinarily neither the directors nor the other officers of a corporation are liable for mere mistake or errors of judgment, either of law or fact. In other words, directors of a commercial corporation may take chances, the same kind of chances that a man would take in his own business. Because they are given this wide latitude, the law will not hold directors liable for honest errors, for mistakes of judgment, when they act without corrupt motive and in good faith, that is, for mistakes which may properly be classified under the head of honest mistakes. And that is true even though the errors may be so gross that they may demonstrate the unfitness of the directors to manage the corporate affairs. This rule is commonly referred to as the "business judgment rule."

*Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 498–99, 535 P.2d 137, *review denied,* 86 Wn.2d 1005 (1975) (quoting W. Fletcher, *Private Corporations* § 1039, at 621–25 (1974)).

Para–Medical relies upon *Schwarzmann v. Association of Apartment Owners,* 33 Wn. App. 397, 655 P.2d 1177 (1982), for the proposition that in Washington the business judgment rule applies *only* to directors of corporations and, thus, cannot immunize Hangen, a temporary officer, from liability. Although the *Schwarzmann* court applied the business judgment rule to the directors of a condominium development, the court did not limit its application to directors. It cited with approval Fletcher's definition, which includes officers within the rule as quoted in *Nursing Home Bldg. Corp. v. DeHart, supra. Schwarzmann,* at 402.

Recently in *Interlake Porsche + Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 728 P.2d 597 (1986), *review denied*, 107 Wn.2d 1022 (1987), this court again included officers within the rule:

> The "business judgment" rule immunizes *management* from liability in a corporate transaction undertaken within the corporation's power and *management's* authority where a reasonable basis exists to indicate that the transaction was made in good faith. Such immunity from liability is absent where a corporate director or *officer* is shown to have acted in bad faith and with a corrupt motive.

(Italics ours.) 45 Wn. App. at 508–09. In *Bucholz* one of the defendants, who was the company's director and chief operating officer, was sued for breach of his fiduciary duty in using corporate funds and assets for his personal benefit. In finding him liable, the court applied the rule without distinguishing between his actions as a director or as an officer. *Bucholz*, at 527.

■ Para–Medical contends that Fletcher's definition of the business judgment rule is invalid because the cases upon which Fletcher relies involved directors exclusively. Because directors function in a decisionmaking capacity, the rule may more often be applied to them. However, it is applicable to management generally:

> Although the "business judgment" rule is usually stated in terms of director functions, it is no less applicable to officers in the exercise of their authority and may be applicable to controlling shareholders when they exercise their more extraordinary management functions.

H. Henn & J. Alexander, *Corporations* § 242, at 663 (3d ed. 1983). Henn's statement comports with case law. *See, e.g., Ski Roundtop, Inc. v. Hall*, 202 Mont. 260, 658 P.2d 1071 (1983) (rule employed in shareholders' derivative action against officers and directors of ski corporation); *Lussier v. Mau–Van Dev., Inc.*, 4 Hawaii App. 359, 667 P.2d 804 (1983) (rule employed in determining whether Kainz as director, president, and general manager of corporation engaged in self–dealing); *Johnson v. Johnson*, 212 N.J.

Super. 368, 515 A.2d 255 (1986) (rule employed in judging action of investment manager and chairman of finance committee in implementing foundation's investment program); *Zapata Corp. v. Maldonado,* 430 A.2d 779, 22 A.L.R.4th 1190 (Del. 1981) (rule employed in stockholder's derivative action against 10 officers and/or directors in determining directors' right to terminate derivative suit). *Cf. Solar–West, Inc. v. Falk,* 141 Ariz. 414, 687 P.2d 939 (Ct. App. 1984) (rule *not* employed in suit against former shareholder because he was neither a corporate director, officer, or majority shareholder).

Para–Medical argues that the rules of agency rather than the business judgment rule determine the duty of care owed by Hangen. Under agency law an agent owes the principal a duty of reasonable skill and ordinary care and diligence. 3 Am. Jur. 2d *Agency* § 216 (1986). In considering the actions of a corporate officer, however, the business judgment rule rather than the standard of ordinary care applies. This rule shields the corporate officer from liability so long as he acts in good faith without a corrupt motive. *Interlake Porsche + Audi, Inc. v. Bucholz.* The court here was correct in applying the rule to Hangen. *Cf. Solar–West, Inc. v. Falk,* 687 P.2d at 943 (finding former shareholder does not fall under the business judgment rule, court determines his liability under "reasonable skill" standard of principal and agency).

Para–Medical contends that, if the business judgment rule is to be applied at all in this case, the proper standard under which to judge Hangen's actions is laid out in RCW 23A.08.343, which is the codified version of the business judgment rule:

> Duties of directors. A director shall perform the duties of a director, including the duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

This statute applies exclusively to directors. Because it is in derogation of the common law of this state, it must be strictly construed and limited to its plain intent and scope. *Marble v. Clein,* 55 Wn.2d 315, 318, 347 P.2d 830 (1959). The plain intent and scope of the statute is a standard of care for directors only.

## COMPETENCY

Para–Medical next contests finding of fact 5, which states:

> The actions of the defendant were competent decisions, particularly in light of his extremely limited experience and training in the leasing business, and management, all of which was known to the plaintiff corporation, by and through its principal, Dr. Mason.

■ Para–Medical contends that the "finding" is actually a conclusion of law. The label applied to the finding or conclusion is not determinative; the court will treat it for what it really is. *Stastny v. Board of Trustees,* 32 Wn. App. 239, 246–47, 647 P.2d 496, *review denied,* 98 Wn.2d 1001 (1982), *cert. denied,* 460 U.S. 1071 (1983). *Accord, Prater v. Kent,* 40 Wn. App. 639, 644, 699 P.2d 1248 (1985). If a term carries legal implications, a determination of whether it has been established in a case is a conclusion of law. *Miebach v. Colasurdo,* 35 Wn. App. 803, 814, 670 P.2d 276 (1983), *rev'd in part on other grounds,* 102 Wn.2d 170, 685 P.2d 1074 (1984). *See also Woodruff v. McClellan,* 95 Wn.2d 394, 396, 622 P.2d 1268 (1980). A finding, on the other hand, is a determination from the evidence of the case propounded by one party and denied by another. Black's Law Dictionary 569 (5th ed. 1979). Considering the language "particularly in light of his extremely limited experience and training in the leasing business, and management," we interpret this statement to be merely descriptive of Hangen's decisions and, hence, a finding of fact. Accordingly, we examine the evidence presented at trial in order to determine whether this "finding" is supported by substantial evidence that Hangen acted in good faith without corrupt motives.

Hangen testified that when he entered into the GMC Astro lease, he knew CCC was in default, but he had a desire to keep things running smoothly with CCC. He believed that he had authority to borrow money and to enter leases. He thought the purchase price represented the fair market value of the truck. When preparing the lease, he followed a procedure different from the one in the procedures manual so CCC could generate more business for themselves and get its other payments current. Similarly, he entered the lease–back arrangement knowing CCC had cash difficulties. In computing the transaction, he used the fair market value of the trucks and then reduced the price 15 percent to cover any "fudge factors." In neither deal was there any evidence of bad faith or corrupt motives.

Although consultation with Rairdon would likely have aided Hangen in making better decisions regarding the leases, we find no testimony by Dr. Mason indicating that consultation with Rairdon was mandatory. In summation, we do not find that Hangen's actions were so egregious as to amount to a no–win decision. Nor do we find that he exercised "carte blanche" in the writing of new leases. *See Joy v. North,* 692 F.2d 880 (2d Cir. 1982).

As a result of the above finding that Hangen was competent, Para–Medical claims that it was precluded from arguing theories of professional malpractice, breach of fiduciary duty, or breach of contract, but fails to present argument or cite legal authority to support its claims. Assignments of error lacking argument or citation of authority will not be considered on appeal unless it is apparent, without further research, that they are well taken. *Lessee v. Union Pac. R.R.,* 38 Wn. App. 802, 805 n.4, 690 P.2d 596 (1984), *review denied,* 105 Wn.2d 1018 (1985). These arguments are not well taken. First, Hangen did not hold himself out as a professional manager, and therefore, professional malpractice is not at issue in this case. Second, Hangen's fiduciary duty has already been discussed in connection with his role as an officer and agent of Para–Medical. Finally, concerning breach of contract, when Hangen

assumed the duties of a temporary officer, he was obligated to act with good faith and no corrupt motive. We conclude that he carried out this obligation in respect to the two challenged transactions.

Affirmed.

RINGOLD, A.C.J., and GROSSE, J., concur.

Review denied by Supreme Court October 6, 1987.