

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 75294-4-I |
| | ) | |
| GINGER ANN GALANDO, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MATTHEW PAUL GALANDO, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 28, 2017 |

SCHINDLER, J. — The court entered an order of contempt finding Matthew Paul

Galando intentionally violated parenting plan provisions, the order of child support, and

the order to list the house for sale. We conclude the court erred in finding Matthew

violated one of the parenting plan provisions and requiring Matthew to comply with

unrelated orders to purge the contempt, but in all other respects, affirm.

FACTS[1]

On January 20, 2016, Ginger Ann Galando filed a motion for an order to show

cause why Matthew Paul Galando should not be held in contempt. Ginger asserted

Matthew violated the parenting plan by failing to enroll in a state-certified drug and

alcohol program, provide copies of urinalysis (UA) test results, attend Narcotics

---

[1] The facts are more fully set forth in the linked case, In re Marriage of Galando, No. 74427-5-I
(Wash. Ct. App. Aug. 28, 2017).

Anonymous/Alcoholics Anonymous (NA/AA) meetings, obtain a psychological evaluation, activate OurFamilyWizard,[2] comply with the telephone contact requirements, and refrain from making derogatory remarks to the children about Ginger. Ginger asserted Matthew violated the child support order by failing to pay $466.92 in medical expenses due December 15, 2015 and $310.28 in medical expenses due January 27, 2016. Ginger also asserted Matthew did not comply with the court order to list the house for sale.

The court scheduled a show cause hearing for January 29. At Matthew's request, the court continued the hearing to February 5. When Matthew did not appear on February 5, the court issued a bench warrant. Matthew retained new counsel. The court granted the motion to quash the bench warrant and scheduled the show cause hearing for April 5.

On March 30, Matthew filed a declaration and response to the motion for contempt. Matthew states, "I have satisfied almost all of the provisions" Ginger claims, including paying the uninsured medical bills, cooperating with the special master to list the house for sale, and activating OurFamilyWizard. Matthew states he is in the process of obtaining drug and alcohol treatment and a psychological evaluation with Dr. Wendy Hutchins-Cook.

At the show cause hearing on April 5, the court found Matthew had made "substantial steps in trying to come into compliance" with the court orders but had not "fully complied."

---

[2] OurFamilyWizard is a website that provides parents with communication tools for scheduling and sharing information about the children.

On April 22, the court entered an "Order on Show Cause Re Contempt/ Judgment." The court found Matthew "intentionally failed to comply with several lawful orders of the Court": the "Final Parenting Plan, Final Order of Child Support, Findings of Fact and Conclusions of Law, and Decree of Dissolution."

The court found that Matthew "willfully refused to comply" with the requirement to enroll and participate in a drug and alcohol treatment program until he obtained an assessment on March 31 and that he "is scheduled for outpatient treatment . . . to begin on 4/6/16." The court found Matthew "willfully refused to comply" with the requirement to schedule a psychological evaluation until April 5 and "did not provide any reason for his failure to comply" when the show cause for contempt motion was filed on January 21.

The court found Matthew willfully refused to comply with the requirement to sign up for OurFamilyWizard until March 25, refused to comply with the "telephone contact requirement of Final Parenting Plan," and violated the prohibition against discussing litigation with the children and making derogatory remarks about Ginger.

The court found that although Matthew paid the uninsured medical bills, payment was "not timely." The court found Matthew "did not provide any reason for his failure to comply with this requirement at the time of filing of the contempt motion on 1/21/16. Respondent willfully refused to comply until 3/9/16."

The court found Matthew "willfully refuses" to comply with the requirement to obtain UA testing and attend weekly NA/AA meetings. The court found Matthew violated the parenting plan by consuming alcohol and marijuana.

The court found the failure to comply with the treatment and monitoring conditions resulted in "significant harm to the children."

> Respondent's failure to comply with the above treatment and monitoring requirements, thus deliberately abdicating his residential time, is a violation of section . . . (2) of the Parenting Plan which states "absence, inconsistency, and conflict are opposed to the best interests of the children." Respondent's willful refusal to comply with the Parenting Plan and intentionally remove himself from any contact with the children has resulted in significant harm to the children.

With respect to the parenting plan violations, the court found:

> [X]   MATTHEW GALANDO, Respondent, has not complied with:
>
> [X]   the residential (visitation) provisions of the Parenting Plan and had the ability to comply with the Parenting Plan, and is presently unwilling to comply. The noncompliance with the residential provisions was in bad faith.
>
> [X]   the treatment requirements and provisions of the Parenting Plan set forth above and had the ability to comply with the Parenting Plan, and is presently unwilling to comply. The noncompliance with the residential provisions was in bad faith.
>
> [X]   the communication requirements and provisions of the Parenting Plan set forth above and had the ability to comply with the Parenting Plan, and is presently unwilling to comply. The noncompliance with the residential provisions was in bad faith.

The court found Matthew violated the order to list the family home for sale by January 18, 2016.

> Respondent signed a listing agreement on January 13, 2016 but it included the requirement that the property not be actively listed or marketed until February 11, 2016, which was after the date required by the Findings. Respondent refused to release information about the house sale until after this motion was filed. Respondent refused to sign the Order Appointing Special Master and required filing of a motion. The house was listed for sale on 3/31/16 with Respondent's belated cooperation. Respondent did not provide any reason for his failure to comply with this requirement. Respondent affirms he is moving out of the

4

home. Updates for the status of the house sale shall be provided to the Court from the Special Master.

The court found Matthew had the ability to comply with "all aspects of the court orders" but "willfully and intentionally refused to comply with the orders."

> Respondent . . . has willfully and intentionally refused to comply with the orders. He has intentionally inflicted significant emotional harm to his children as a result of his willful violation of the court orders. He has failed to provide any explanation for his failure to comply with all aspects of the court orders. Respondent's belated compliance with portions of the court orders provides further evidence of his ability to comply at all times.

The court entered specific conditions to purge the findings of contempt. As to the parenting plan provisions, the court ordered confirmation and full compliance with the alcohol and drug treatment program, the psychological evaluation, monitoring requirements, and participation in NA/AA. The court ordered full compliance with the parenting plan, child support order, decree of dissolution, the findings of fact and conclusions of law entered in the dissolution proceeding, and the order appointing special master for six months. The court ruled that further delay in payment "for any reason whatsoever" would result in "jail time."

> There shall be no delay in payment for any reason whatsoever. If payments are not made as required in a timely manner, it shall be a deliberate violation of these purge conditions and Petitioner may pursue contempt motion and jail time will be ordered.

## ANALYSIS

Matthew does not dispute the contempt finding that he willfully, intentionally, and in bad faith did not obtain UAs or attend NA/AA meetings and consumed alcohol and marijuana. Matthew challenges other contempt findings and some of the conditions to purge the contempt.

5

The trial court in a dissolution proceeding has the authority to enforce its orders. In re Marriage of James, 79 Wn. App. 436, 439, 903 P.2d 470 (1995). "Punishment for contempt of court is within the sound discretion of the trial court" and will not be reversed absent an abuse of discretion. James, 79 Wn. App. at 439-40.

A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A court bases its decision on untenable reasons if it uses an incorrect standard or the facts do not meet the correct standard. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). We review findings of fact for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Unchallenged findings are verities on appeal. Merriman v, 168 Wn.2d at 631.

In determining whether the facts support finding contempt, the court "must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order." In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995).

Matthew contends the court did not have the authority to find him in contempt for the violations he addressed before the show cause hearing. We disagree. Chapter 7.21 RCW governs civil contempt proceedings. Under RCW 7.21.010(1)(b), a court may find a person in contempt without regard to whether the person has complied with the court order at the time of the show cause hearing. RCW 7.21.010(1)(b) defines

"contempt of court," in pertinent part, as "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.030(3) allows the court to order a contemnor to pay losses suffered as a result of the contempt and costs incurred in the contempt proceedings for any person found in contempt of court "without regard to whether it is possible to craft a coercive sanction." In re Application by Rapid Settlements, Ltd., for Approval of Transfer of Structured Settlement Payment Rights, 189 Wn. App. 584, 601, 359 P.3d 823 (2015). We also note that RCW 26.18.050(1)[3] states a court may find a parent in contempt if "there is reasonable cause to believe the obligor has failed to comply with a support or maintenance order" and RCW 26.09.160(2)(b) states that the court shall find a parent in contempt if "the parent, in bad faith, has not complied with the order."

Matthew contends the court erred by finding him in contempt for deliberately abdicating residential time with the children. RCW 26.09.160(2)(b) states:

> If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order . . . , the court shall find the parent in contempt of court.

RCW 26.09.160 requires a finding that the parent "acted in bad faith or committed intentional misconduct." James, 79 Wn. App. at 441.

Matthew argues the court could not find him in contempt because "[n]o finding of bad faith was made here." Contrary to Matthew's argument, the court specifically found that he acted in bad faith in violating the parenting plan—"noncompliance with the residential provisions was in bad faith."[4] The Order on Show Cause Re

---

[3] Emphasis added.
[4] Emphasis added.

Contempt/Judgment states, in pertinent part:

> Respondent's failure to comply with the above treatment and monitoring requirements, thus <u>deliberately abdicating his residential time</u>, is a violation of section . . . (2) of the Parenting Plan which states "absence, inconsistency, and conflict are opposed to the best interests of the children." Respondent's willful refusal to comply with the Parenting Plan and intentionally remove himself from any contact with the children has resulted in <u>significant harm to the children</u>.[5]

Matthew argues he did not act in bad faith because "to have contact of any kind with the children . . . would have constituted a violation of the visitation suspension provision of the parenting plan." The unchallenged findings do not support his argument. Because Matthew intentionally refused to comply with the parenting plan, the court did not abuse its discretion by finding that he acted in bad faith.

Matthew also challenges the finding that his refusal to contact the children resulted in significant harm. But Matthew does not challenge the finding that his absence from the lives of the children is "opposed to the best interests of the children." Matthew also concedes that his "refusal to be in contact with the children even when they tried to contact him caused them to be extremely upset." The record supports finding Matthew in contempt for deliberately abdicating residential time with the children ·by not complying with the treatment and monitoring requirements of the parenting plan.

Matthew contends the court erred by finding him in contempt for making derogatory remarks about Ginger to the children. The parenting plan provides, in pertinent part:

> 8.   Affections. Each parent agrees to exert every reasonable effort to maintain free access and unhampered contact and communication between the children and the other parent, and to promote the

---

[5] (Emphasis added.) We also note Matthew does not challenge the findings that he had the ability to comply fully with the parenting plan or that he "willfully and intentionally refused to comply" with the provisions.

emotions of affection, love and respect between the children and the other parent. Each parent agrees to refrain from words or conduct, and further agrees to discourage other persons from uttering words or engaging in conduct, which would have a tendency to estrange the children from the other parent, to damage the opinion of the children as to the other parent, or which would impair the natural development of the children's love and respect for the other parent.

. . . .

13.  Children's Involvement. Neither parent shall ask the children to make decisions or requests involving the residential schedule. Neither parent shall discuss the residential schedule with the children except for plans, which have already been agreed to by both parents in advance. Neither parent shall advise the children of the status of child support payments or other legal matters regarding the parents' relationship. Neither parent shall use the children, directly or indirectly, to gather information about the other parent or take verbal messages to the other parent. The father shall not use the children to deliver payments, mail, or any financial information to the mother.

. . . .

15.  Derogatory Comments. Neither parent shall make derogatory comments about the other parent or their spouse or allow anyone else to do the same in the children's presence. Neither parent shall allow or encourage the children to make derogatory comments about the other parent or their spouse.

The contempt order states, in pertinent part:

Failure to comply with section . . . (8), (13), and (15) of Parenting Plan when he discussed issues relating to litigation, residential schedule, and made derogatory remarks about mother to the children. Respondent has deliberately inflicted emotional harm and distress upon the parties' children.

Matthew argues that "nothing in the record indicates" he made derogatory remarks about Ginger and there is "no evidence that if made they caused significant emotional harm." The record does not support his argument. Ginger testified that Matthew told the children that Ginger "was the person keeping them from seeing him"

9

and the conversation "upset [M.G.] greatly." The unchallenged findings show that contrary to the best interests of the children, Matthew's failure to comply with the parenting plan and intentionally abdicating his residential time resulted in "significant harm to the children." The court did not abuse its discretion by finding Matthew in contempt for making derogatory remarks about Ginger to the children.

Matthew contends the court erred by finding him in contempt for failing to contact the children by telephone. Matthew argues the parenting plan does not require him to speak with the children. We agree with Matthew.

Section 4 of the parenting plan states:

> Telephone/Skype[6] Access. When the children are not residing with a given parent that parent shall be permitted unimpeded and unmonitored telephone or Skype access with the children of not less than two calls per week at reasonable times and for reasonable durations. The GAL recommends that the children call the non-residential parent every Tuesday, Thursday, Saturday and Sunday at 5 p.m. These calls shall be brief (no more than 20 minutes combined for both children) and shall be initiated by the residential parent on behalf of the children.[7]

Although the provision is permissive, the court found that Matthew willfully refused to comply with telephone contact as a requirement of the parenting plan. The order on contempt states, in pertinent part:

> Failure to comply with telephone contact requirement of Final Parenting Plan, section . . . (4), page 21. False claims of failure to allow contact are denied. Respondent willfully refuses to comply. Respondent has deliberately inflicted emotional harm and distress upon the parties' children.[8]

Because the parenting plan does not require telephone contact, the court erred in finding Matthew in contempt for violating that parenting plan provision.

_____

[6] Skype is a live video chat and long-distance voice calling service.

[7] Emphasis added.

[8] Emphasis added.

Matthew challenges finding him in contempt for failing to list the family home for sale by January 18, 2016. The record shows the court ordered Matthew to list the house for sale by January 18, 2016. But Matthew claims the court cannot hold him in contempt for violating a finding of fact and the court did not specify a date for the sale of the home in the decree of dissolution.

We treat a finding for what it really is. Para-Med. Leasing, Inc. v. Hangen, 48 Wn. App. 389, 397, 739 P.2d 717 (1987). The decree incorporates the findings of fact and conclusions of law. Finding of fact 2.9 states the house "shall be listed for sale within 60 days, no later than 1/18/2016." The unchallenged contempt findings of fact state Matthew listed the home for sale on February 11, 2016. The court did not err by finding that Matthew did not comply with the order.

Matthew contends the purge conditions that require him to comply with the parenting plan, child support order, and decree of dissolution, including the timely payment of maintenance, are punitive. Matthew also asserts the conditions are not related directly to the orders he violated.

A "remedial sanction" is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). By contrast, a "punitive sanction" is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). To determine whether sanctions are punitive or remedial, we look to whether the contempt sanction " 'has a coercive effect—whether the contemnor is able to purge the contempt and obtain his release by committing an

affirmative act.' " In re Interest of Silva, 166 Wn.2d 133, 141-42, 206 P.3d 1240 (2009)[9] (quoting In re Dependency of A.K., 162 Wn.2d 632, 646, 174 P.3d 11 (2007)). A purge condition must reasonably relate to the cause or nature of the contempt. In re Interest of M.B., 101 Wn. App. 425, 450, 3 P.3d 780 (2000).

The order on contempt states, in pertinent part:

> Full compliance with payment of all expenses as required under the Order of Child Support, as well as any and all other financial obligations, such as maintenance. There shall be no delay in payment for any reason whatsoever. If payments are not made as required in a timely manner, it shall be a deliberate violation of these purge conditions and Petitioner may pursue contempt motion and jail time will be ordered.
>
> . . . .
>
> **OTHER:**
>
> The findings of contempt will be purged only upon MATTHEW GALANDO successfully complying with the provisions set forth in the parties' Final Parenting Plan, Final Order of Child Support, Decree of Dissolution and Findings of Fact and Conclusions of Law entered under this cause number on November 18, 2015 and with Order Appointing Special Master, entered under this cause number on February 5, 2016, for a period of six months (180 days) from the date of the entry of this Order.
>
> In the event Respondent, Matthew Galando, fails to comply with the provisions set forth in the Final Parenting Plan, Final Order of Child Support, Decree of Dissolution, Findings of Fact and Conclusions of Law and Order Appointing Special Master, then further sanctions, including attorney's fees and costs and return to imprisonment, may be awarded as the Court deems just and equitable under the circumstances.

The court did not err by ordering coercive conditions that relate to the violations and the contempt findings and require compliance with the parenting plan, child support order, and decree, including full compliance with the parenting plan and timely payment of all expenses required by the child support order. But to the extent the purge

---

[9] Internal quotation marks omitted.

condition requires Matthew to comply with unrelated provisions of the decree of dissolution and the findings of fact and conclusions of law, it is an abuse of discretion.

We reverse the finding of contempt and purge condition related to telephone contact and the purge condition to comply with orders that are unrelated to the findings of contempt. In all other respects, we affirm. Upon compliance with RAP 18.1, Ginger is entitled to reasonable attorney fees and costs on appeal.[10]

Schindler, J.

WE CONCUR:

Trickey, ACJ

Cox, J.

---

[10] Under RCW 7.21.030(3), a court may "order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees." See also R.A. Hanson Co., Inc. v. Magnuson, 79 Wn. App. 497, 505, 903 P.2d 496 (1995).