[No. 16613-5-II.    Division Two.    May 19, 1995.]

KIEWIT-GRICE, *Respondent*, v. THE STATE OF
WASHINGTON, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Charles F. Secrest, Assistant,* for appellant.

*John Stephen Riper* and *Stanislaw, Ashbaugh, Riper, Peters & Beal,* for respondent.

SEINFELD, C.J. — A jury determined that the State Department of Transportation caused Kiewit-Grice to sustain damages in the amount of $1,511,959. The trial court then awarded Kiewit-Grice prejudgment interest on the award. The State appeals. We reverse.

## FACTS

In 1984, the Department contracted with the joint venture Kiewit-Grice to construct concrete bridge pontoons for the third Lake Washington floating bridge. The contract required that the pontoons be built according to the Department's specifications. It also called for two separate construction cycles, "Cycle I" and "Cycle II", during each of which the contractor was to build four pontoons for a total of eight pontoons.

During Cycle I, "rock pockets" and "voids" (holes) repeatedly formed in the concrete walls. Kiewit-Grice expended substantial sums to correct these problems and, eventually, hired an expert to diagnose their cause. The expert concluded that the Department's concrete aggregate specifications were to blame.

Kiewit-Grice then obtained from the Department a contract change that permitted the use of finer grades of aggregates. As a result, the contractor encountered only minor

problems during Cycle II and completed the work in August 1987.

In December 1989, Kiewit-Grice filed a complaint against the Department. It alleged that the Department had breached the construction contract by providing defective concrete specifications, thereby forcing Kiewit-Grice to expend extra sums to construct the pontoons and perform repair work. The complaint demanded monetary damages "in an amount to be proven at the time of trial", interest, costs, and attorney's fees.

Following a jury trial in June 1992, the jury returned a verdict awarding Kiewit-Grice $1,511,959. Kiewit-Grice then moved for an award of prejudgment interest as of June 1, 1985, and for costs for: (1) statutory attorney's fees ($125); (2) filing fees ($78); (3) fees for service of process ($26.50); (4) deposition transcripts costs ($968.05); and (5) witness fees and witness mileage costs ($3,119.48), for a total of $4,317.03 (excluding prejudgment interest).

Kiewit-Grice supported its motion for prejudgment interest with the affidavit of its attorney, John Riper, who attached to his affidavit a page of handwritten calculations. Riper stated that one of the jurors, Cheral Hads, had given him the handwritten page and that it showed the component parts of the jury's award along with the total award. According to Riper, Hads said that she had made the notations during jury deliberations. Kiewit-Grice also filed a declaration of the jury foreperson, Alisha Colbert, who described how the jury had calculated each component of the award to Kiewit-Grice.

The Department objected to the admission and consideration of juror Hads' jury calculations, juror Colbert's declaration, and Kiewit-Grice's attorney's declaration. It also objected to the cost bill. The trial court overruled the objections and awarded Kiewit-Grice prejudgment interest and the requested costs.

The trial court concluded that the jury had reached its verdict without exercising opinion or discretion and, thus, the jury award represented a liquidated sum. It further concluded that Kiewit-Grice had incurred the Cycle I additional

expenses before June 1, 1985. The court then adopted this date as the appropriate one from which to calculate prejudgment interest at the statutory rate.

The Department appeals, asking this court to reverse the trial court's award of prejudgment interest, and to remand for a recalculation of costs.

ANALYSIS

Prejudgment Interest

1. Dissection of the Jury's Verdict

The Department argues that (1) the trial court improperly relied upon the affidavits of juror Colbert and attorney Riper to segregate the jury award into component parts; (2) the trial court could only consider the jury's lump sum award in determining whether those damages qualified as liquidated for the purpose of ordering prejudgment interest; and (3) the record does not support the conclusion that the jury could determine damages without resorting to opinion or the exercise of discretion. Thus, it further argues, the trial court erred in concluding that the damages were liquidated and that Kiewit-Grice was entitled to prejudgment interest.

In its conclusion of law 5, the trial court explained its reasons for considering the juror's affidavit.

> In determining whether to award prejudgment interest, it is appropriate for the Court to consider how the jury arrived at its verdict. The testimony of jurors explaining their verdict, whether in the form of a Declaration or otherwise, is considered by the courts in a variety of contexts, so long as the testimony is not submitted in an effort to impeach the verdict. In *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962), for example, the Supreme Court considered relevant [excerpts] from jurors' sworn statements about how the verdict was rendered in reaching its holding that the defense verdict should be reversed.

Attorney Riper's affidavit described what juror Hads had told him. That portion of the affidavit was inadmissible hearsay. ER 801, 802. Juror Colbert's affidavit concerned itself with the collective thought processes that controlled the jury's calculation of the components of Kiewit-Grice's

damage award. These statements inhered in the verdict and, thus, could not be considered by the trial court.

■ The general rule is that jurors can attest only to facts which do not inhere in their verdict. *O'Brien v. Seattle*, 52 Wn.2d 543, 547, 327 P.2d 433 (1958). "The individual or collective thought processes leading to a verdict 'inhere in the verdict' ". *Johnson v. Carbon*, 63 Wn. App. 294, 301, 818 P.2d 603 (1991), *review denied*, 118 Wn.2d 1018 (1992). Where a juror's affidavit describes the considerations that led to the verdict, a court may not consider it. *Coleman v. George*, 62 Wn.2d 840, 842, 384 P.2d 871 (1963).

We find no authority supporting the position that this rule applies only where one seeks to impeach the verdict. *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651, 379 P.2d 918 (1962), cited by the trial court, does not limit the applicability of the general rule.

In *Gardner,* the jury rendered a defense verdict. The plaintiff then moved for a new trial, citing jury misconduct and supporting the motion with numerous juror affidavits. The *Gardner* court carefully distinguished the proper from the improper use of juror affidavits. Quoting *State v. Parker*, 25 Wash. 405, 65 P. 776 (1901), the *Gardner* court explained

". . . In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself."

*Gardner*, at 840. The *Gardner* court continued,

The crux of the problem is whether that to which the juror testifies (orally or by affidavit) in support of a motion for a new trial, inheres in the verdict. If it does, it may not be considered; if it does not, it may be considered by the court as outlined in *State v. Parker, supra.*

*Gardner*, at 841. Thus, the trial court erred in considering Hads' and Riper's affidavits.

■ Absent the Hads and Riper affidavits, the trial court was left with a general verdict form setting forth a lump sum award. Where a jury returns a lump sum verdict, the

trial court may not dissect the verdict into component parts. *Foster v. Giroux*, 8 Wn. App. 398, 506 P.2d 897 (1973); *Wheeler v. Catholic Archdioces of Seattle*, 124 Wn.2d 634, 642, 880 P.2d 29 (1994).

### 2. Liquidated or Unliquidated Damages

■■ We review a trial court's award of prejudgment interest for abuse of discretion. *Curtis v. Security Bank*, 69 Wn. App. 12, 20, 847 P.2d 507, *review denied*, 121 Wn.2d 1031 (1993). Prejudgment interest is awardable

> "(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion."

*CKP, Inc. v. GRS Constr. Co.*, 63 Wn. App. 601, 614, 821 P.2d 63 (1991) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)), *review denied*, 120 Wn.2d 1010 (1992).

A claim is liquidated if "the evidence furnishes data which, if believed, makes it possible to compute the amount [owed] with exactness, without reliance on opinion or discretion." *Prier*, at 32. An unliquidated claim is one

> "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."

*Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986) (quoting *Prier*, at 33).

■ Where a defendant has challenged the reasonableness of the amount awarded for extra work arising outside of the contract, the award is unliquidated, "because reliance upon opinion and discretion was necessary in determining the reasonableness of the amounts expended". *CKP*, at 617 (citing *Hansen*, at 477). "A claim is unliquidated if the principal must be arrived at by a determination of reasonableness." *Tri-M Erectors, Inc. v. Donald M. Drake Co.*, 27 Wn. App. 529, 537, 618 P.2d 1341 (1980), *review denied*, 95 Wn.2d

1002 (1981); *Aker Verdal A/S v. Neil F. Lampson, Inc.,* 65 Wn. App. 177, 192, 828 P.2d 610 (1992) (since it was within the jury's discretion to determine a reasonable hourly rate, the plaintiff's labor costs were unliquidated and plaintiff not entitled to prejudgment interest on the amount awarded for labor costs).

"Prejudgment interest is favored in the law based on the premise that he who retains money he should pay to another should be charged interest on it." *Universal/ Land Constr. Co. v. Spokane,* 49 Wn. App. 634, 641, 745 P.2d 53 (1987) (citing *Prier,* at 34). However, "[a] defendant should not be required to pay prejudgment interest in cases where he is unable to ascertain the amount owed." *CKP,* at 614 (citing *Hansen,* at 472-73).

Kiewit-Grice contends that the prejudgment interest award is sustainable even without consideration of the jury's methodology in reaching its verdict. It contends that it documented its extra costs by comparing the amounts needed to construct the four pontoons in Cycle II, using correct specifications, with the amounts spent constructing the four pontoons in Cycle I, using the incorrect specifications. Thus, Kiewit-Grice argues, the jury could determine damages using this objective data and did not need to rely on opinion or discretion.

The fallacy in this reasoning is that Kiewit-Grice asked the jury for a total of $3,487,746. This figure included amounts for labor, equipment, concrete, forms, mock-ups, small tools, consultant fees, overhead, and "Home Office G & A". The Department itemized the same costs and reached a total of $563,225. The jury award of $1,511,959 is between these two figures. It is not possible to know, absent the juror affidavits, whether the jury reached this figure by compromise, by using its own calculations, by deleting items, or by relying on a more subjective method. It is clear that the jury did not accept Kiewit-Grice's figure. Thus, it cannot be said that the jury did not exercise any opinion or discretion in reaching its award.

Further, the Department challenged the reasonableness of Kiewit-Grice's claimed expenditures. Its consulting engineer,

John Hunt, testified that he had been employed by the Department to evaluate the damages suffered by Kiewit-Grice and the reasonableness of the amount claimed by Kiewit-Grice. Hunt discussed the various components of the damages suffered by Kiewit-Grice and provided conflicting calculations. The Department presented evidence challenging the reasonableness of the amounts claimed by Kiewit-Grice for each item except extra concrete costs and Kiewit-Grice's consultant fees. For the reasons discussed above, it is not possible to determine if the jury made an award for these two items.

As the Department could not determine the amount it owed for the extra work until the jury exercised its discretion, the trial court erred in concluding that the amount of the judgment was liquidated as of 1985. The Department was not responsible on the debt until it could determine the amount of its obligation; this was not possible until the jury rendered its verdict. Thus, the trial court erred in awarding prejudgment interest.

## Costs Award

The Department also challenges the costs award. In its opening brief it argued that the trial court miscalculated three classes of costs: deposition transcript fees, witness fees, and witness mileage. However, it conceded the issue of witness fees in its reply brief.

A party is entitled to the costs of taking depositions if the depositions were taken and used for trial purposes. *Tombari v. Blankenship-Dixon Co.*, 19 Wn. App. 145, 150, 574 P.2d 401, *review denied*, 90 Wn.2d 1015 (1978); RCW 4.84.010, .090. RCW 4.84.010 states explicitly that "the expenses of depositions shall be allowed on a pro rata basis for those portions of the depositions introduced into evidence or used for purposes of impeachment." RCW 4.84.010(7). However, here the award for deposition costs apparently included fees for deposition transcripts that were not used at trial. This was error. Kiewit-Grice does not contend otherwise in its brief.

The Department also challenges the award of costs for witness mileage logged outside of Washington's borders.

RCW 4.84.090 and RCW 2.40.010 authorize the award of witness mileage costs but neither statute addresses the in-state/out-of-state distinction. However, a line of early cases specifies that a witness from out of state is entitled to mileage within the borders of the state. *See Pearson v. Gullans*, 81 Wash. 57, 142 P. 456 (1914); *Aldredge v. Oregon-Washington R. & Nav. Co.*, 79 Wash. 349, 140 P. 550 (1914); *Carlson Bros. & Co. v. Van De Vanter*, 19 Wash. 32, 52 P. 323 (1898). By negative implication, it appears that the Supreme Court in the above cases intended that there not be a mileage award until the witness crossed the state line. Thus, we conclude that the trial court erred in awarding witness fees for out-of-state mileage.

Accordingly, we reverse the award of prejudgment interest and remand for a recalculation of deposition transcript and witness mileage costs.

MORGAN and BRIDGEWATER, JJ., concur.

Review denied at 127 Wn.2d 1018 (1995).