IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DIANE S. LOSIE,<br><br>                              Respondent,<br><br>          v.<br><br>BRIAN J. KANEEN, trustee of the<br>Kaneen family trust,<br><br>                              Appellant. | No. 82993-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — This case involves the distribution of a family trust. Brian Kaneen and Diane Losie are brother and sister. After their mother died, Kaneen, the sole trustee, unreasonably delayed distributing the Kaneen Family Trust until after Losie filed a TEDRA petition. Though the Trust was to be distributed equally between the siblings, the trial court failed to consider earlier distributions to Losie and offset already-paid tax-related fees by the Trust in the final judgment. The court also erred in awarding Losie 12 percent prejudgment interest under RCW 19.52.010. When given an opportunity to correct the errors in a partial motion to reconsider, the court abused its discretion in denying that motion. We affirm the trial court's finding that Kaneen breached his fiduciary duty of diligence and the court's award of attorney fees to Losie. However, we reverse the judgment, and remand to the trial court to vacate the award of

Citations and pin cites are based on the Westlaw online version of the cited material

prejudgment interest and re-calculate the trust distributions consistent with this opinion.

FACTS

James Ralph and LaVerna Kaneen had two children, Brian Kaneen and Diane Losie. In May 1986, James Ralph and LaVerna[1] created the Kaneen family trust, naming themselves as co-trustees and designating Kaneen as sole trustee in the event his parents could not serve. The Trust directed that "[u]pon the death of a Trustor. . . the Trustee shall allocate and dispose of the remaining assets of the trust[.]" It further required that "[u]pon the death of the last of the Trustors to die, the remaining trust estate shall be distributed in equal shares" to their two children.

In May 2009, LaVerna executed her final will, naming Kaneen as her personal representative. LaVerna also signed a durable power of attorney, naming Kaneen as the attorney-in-fact. James Ralph died in February 2013 and LaVerna suffered a stroke in January 2017. Kaneen became trustee in March 2017 when LaVerna resigned due to health issues.

At the time of her stroke, LaVerna was living at a senior facility in Washington. Kaneen was living in Indiana and Losie was living in California. After LaVerna's stroke, she was no longer spending money on her own and Kaneen began reviewing his mother's financial accounts and took control of her bills and financial affairs.

In August 2017, Losie traveled to Washington to clean out her mother's

---

[1] We refer to LaVerna by her first name for clarity.

2

home. Kaneen arranged for the sale of their parent's golf cart to assist Losie with her expenses for the trip. Kaneen hired an estate company to manage the remaining property in the home.

LaVerna's house was sold for $70,000 in November 2017 with the proceeds deposited into her Bank of America (BoA) account which was not part of the Trust, but co-owned by LaVerna and her children. Prior to the house sale, both siblings took items from their mother's home. Kaneen took gold and silver coins for which he paid Losie her portion with personal funds, $18,065.13, in September 2017.

LaVerna passed in December 2017. At that time the value of the assets in the Trust account totaled $1,001,828.12.

A significant portion of the Trust assets, over $450,000, included several precious metal certificates issued by Perth Mint.[2] In July 2017, before LaVerna had died, Kaneen had already discussed liquidating the certificates with Asset Strategies International (ASI). ASI told Kaneen he could liquidate his parents' certificates so long as he could provide additional documentation including James Ralph's death certificate, copies of Kaneen's identification, the power of attorney form, an application filled out by Kaneen, the Perth Mint certificates, and lastly, a "copy of the [w]ill and probate. If there is no probate, we will need an original letter from the lawyer indicating why there was no probate." Losie found the mint certificates while cleaning LaVerna's home in August 2017 and mailed

---

[2] According to the record, the Perth Mint is Australia's official bullion mint and is owned by the Government of Western Australia. The certificates are sold through a global network of independent distributors.

them to Kaneen. In September 2017, Kaneen told Losie ASI told him he could sign for the certificates without an attorney because he held the power of attorney.

In January 2018, Kaneen sent an e-mail to Losie indicating that all the major bills should be paid with the exception of an outstanding pharmacy bill that should be less than $40.

That same month, Kaneen also indicated to Losie that he had "spent many hours researching trusts and estates and taxes" and he did not "understand anything." He could not determine if there was an estate and argued with Losie about whether the BoA account belonged to the siblings or was subject to probate. Losie also testified that although her mother had a CPA and an attorney, Kaneen did not want to pay the money to consult with them. She also testified that he "didn't want to hire anybody to help him," which resorted to him reading hundreds of pages of material.

In March 2018, Losie asked Kaneen to liquidate and disburse the Trust as soon as Kaneen determined the tax liability to avoid further capital gains. He did not do so.

The following month, Losie wrote Kaneen to ask about getting the money from their mother's BoA account, which was not part of the Trust. Kaneen had previously moved money from this account into the Trust. Kaneen responded that he planned to close the account and place the money into the Trust. Losie objected, telling him he was free to keep his share of the money in the bank, but she wished to have her share at that time to respond to mounting medical costs

4

due to her husband's cancer treatments. At the time of LaVerna's death, the BoA account had a balance of $79,564.09. Kaneen and Losie also held the BoA account in joint tenancy with right of survivorship. Kaneen paid LaVerna's bills from the BoA account and also transferred balances into the Trust, including $42,000 on April 12, 2018. Shortly after, Kaneen wrote Losie a $21,000 check from the Trust. Kaneen identified the check as a "partial trust distribution." Losie and Kaneen disagreed over whether Kaneen had to transfer the BoA funds into the Trust. Kaneen transferred the funds from the BoA account into the Trust over Losie's objection.

In May 2018, Kaneen told Losie that ASI was only waiting on Kaneen's request to sell the Perth Mint certificates but that he had elected to wait since "metals [have] taken a little dip." He also told Losie, "It will be a while before we can completely liquidate the trust. If you need some immediate money, let me know. If you need more than $50,000, I'll need to know why."

In June 2018, Losie again asked Kaneen when she would receive a disbursement. He did not respond.

In January 2019, Losie made two additional requests and Kaneen sent her a partial distribution check for $50,000. In his attached letter, Kaneen complained that Losie had not been responsive to his requests. He indicated that Losie had not complied with his request to send him a memory box that belonged to their parents,[3] her trust expenses, and an appraisal for their mother's

---

[3] Losie took the memory box from her mother's home in August 2017. According to Losie, the box held "some artifacts [from] my dad from his military uniform in there,

5

diamond rings. He noted that he could not settle the Trust until Losie sent her expenses.

Losie hired an attorney in February 2019. In July 2019, Losie's attorney requested from Kaneen an accounting for the Trust and a timeline for distribution to prevent the filing of a TEDRA petition.

By August 2019, Kaneen obtained counsel. On August 7, 2019, Kaneen liquidated the Perth Mint certificates for total of $531,845.88. On August 16, Kaneen's attorney responded to Losie's request for information claiming that "any and all delay in the production of a final annual accounting and ultimate distribution of the Trust is solely due to the refusal of [Losie] to communicate and cooperate per the provisions of the Trust." The response letter indicated that Kaneen could not complete the distribution until Losie provided "receipts for any Trust expenses that she incurred" and any "receipts for the preliminary distributions both cash and tangible that she has already received."

In October 2019, Losie filed a TEDRA petition seeking to remove Kaneen as trustee for breaching his fiduciary duties and requesting that he provide an accounting for the Trust and a timeline for distribution of the Trust. In his response, Kaneen denied that he had breached his fiduciary duties. In addition to requesting attorney fees and costs, Losie asked the court to award her damages, including $99,717.61 for the interest accrued on her portion of the trust distribution that Kaneen held from January 2018 to September 2019.

---

like a button and the epaulet that was off his uniform in it." The box also contained items from their mother's side of the family.

Soon after, Kaneen sent Losie a distribution check for $473,386.96. In March 2020, Kaneen took $467,000 as his own distribution and left $94,000 in the Trust as a holdback for final reconciliation.

At a bench trial in June 2021, only Kaneen and Losie testified.

Losie's overall testimony reflected her belief that her brother needlessly delayed distributing the Trust. She stated that her brother did not understand how to perform his duties, spent hours on useless research, that he should have immediately split the BoA funds and not comingled non-trust assets into the Trust account, and that he had the necessary information to liquidate the Perth Mint certificates prior to their mother's passing. She stated her mother did not have any expenses Kaneen did not know about given the fact that he was managing her finances, and their mother had no outstanding creditors. Losie indicated that she did not have any trust expenses and never sought any reimbursement for expenses. Losie testified that "[t]here was nothing he needed from me to further the process of closing out the trust."

Losie also testified that she believed her brother was holding her inheritance hostage in part because he wanted the memory box and that his several offers to give her money was a "control" technique. Kaneen testified that he did not wish to distribute the assets of the Trust because he was concerned there would be an outstanding creditor, and he believed from estate books he read that he should not distribute assets until he paid all the bills and taxes. This concern led to Kaneen downloading 6,006 e-mails from his mother's e-mail account in January 2019 to check for creditors, but he did not find any emails that

would have prevented him from distributing Losie's Trust funds.

Because he could not put the Perth Mint certificates on the 2018 taxes, Kaneen "saw no reason to not maintain the investments as long as possible." He continued, as one of the beneficiaries of the Trust, "I wanted to maximize the gain that I knew was going to come before I liquidated [them]." "I was not willing to sell low." Kaneen admitted that he would have liquidated the Trust in February 2019 if Losie would have only responded to his inquiries about the travel expenses.

Losie also challenged Kaneen's request to the court to be reimbursed $7,000 for his expenses for services to the Trust. Losie's counsel asked Kaneen why he believed he was entitled to his expenses listed months prior to his appointment as Trustee in March 2017 and about his personal purchases after he became trustee for items such as men's clothing and food. Kaneen admitted that some of the expenses he incurred were for trips to care for his mother, and he believed he had authority to charge for the expenses he billed to the Trust but "I don't – I don't know."

In its findings of fact and conclusions of law, the trial court ruled that other than a few "modest pre-distributions" made to Losie, Kaneen's failure to distribute Trust proceeds was a violation of the Trust directive to distribute the Trust upon LaVerna's death:

> The Trustee has violated this mandatory directive and instead
> elected to hold back the Trust funds for two years without
> reasonable justification and despite demand for their release.

The court found that Losie's October 2019 lawsuit was the impetus for Kaneen's

8

December 2019 payment of Losie's Trust distribution.

The court noted that all of LaVerna's creditors had been paid in January 2018 and the Trust had no creditors and there was nothing to probate. The court found that Kaneen's claims about his difficulties in liquidating the Perth Mint certificates were not credible, and he had the information he needed to liquidate them prior to LaVerna's passing. The court ruled that Kaneen's insistence that Losie itemize her expenses and account for the value of the personal property Losie took "as a condition precedent for the trust distribution was unreasonable and inappropriate" and had "no nexus" to the administration of the Trust because LaVerna's personal property was not a Trust issue.

The court also found that Kaneen's questions related to the Trust could have been resolved by consulting with LaVerna's attorney or CPA, and his refusal to obtain advice from professionals was unreasonable. The court noted that Kaneen was "overly focused on minutiae; wracked by indecision and seemingly unable to process information, make a plan and execute it."

The court concluded that as a result of Kaneen violating his duty of diligence, Losie was entitled to "recover the difference between the present value [of the Trust] and the value that she would have had if the breach had not occurred." The court awarded Losie prejudgment interest on the trust distribution that was withheld from her at a rate of 12 percent under RCW 19.52.010 because "the amount owing is a liquidated sum which makes it possible to compute the amount owing without reliance on opinion or discretion." The court rejected Losie's request to start the interest on January 2018 and instead applied

interest from July 1, 2018 to December 2019: "6 months post LaVerna's death is an appropriate date at which to commence interest."

The court ordered that Kaneen would bear the cost of any taxes and tax preparation costs for 2019 and beyond and a tax penalty for failing to file estimated taxes for 2018. Kaneen was also ordered to pay half of the 2018 federal and state income taxes paid by the Trust that would not have been paid if he had distributed the taxable income to himself and Losie. The court awarded Losie her attorney fees and costs. The court found Kaneen's fees for trustee services to be excessive and awarded him $4,000 (100 hours) as a reasonable sum for his time. Kaneen was also ordered to pay all of his attorney fees and costs and to divide the remaining approximate $94,000 Trust balance equally with Losie.

In the judgment order, the court calculated Losie's principal judgment amount as $47,722.55 along with attorney fees and costs for $112,349.41 for a total judgment of $160,071.96. Kaneen's cost for the 2018 federal and state income taxes that could have been avoided were assigned as $2,060. The 2019 taxes, preparation, and 2018 penalty totaled $7,595. The court awarded Kaneen $4,000 in services to the Trust.

Kaneen moved for partial reconsideration on the basis that Losie had already received $77,386.96 more than Kaneen creating a windfall, and that the prejudgment interest awarded to Losie was not available as a damages award. The court denied the motion.

Kaneen appeals.[4]

DISCUSSION

Failure to Timely Distribute

We first address Kaneen's assignments of error to several of the trial court's findings related to his failure to liquidate and disburse the Trust in a timely manner.

Following a bench trial, we review the trial court's decision to determine if findings of fact are supported by substantial evidence and whether the findings support the conclusions of law. Endicott v. Saul, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). "Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Endicott, 142 Wn. App. at 909. When reviewing a record for substantial evidence, we are required only to consider evidence favorable to the prevailing party. Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 713, 308 P.3d 644 (2013). We defer to the finder of fact to evaluate the persuasiveness of the evidence and the credibility of witnesses. Endicott, 142 Wn. App. at 909. We will not review credibility determinations. Id.

---

[4] In a footnote of Kaneen's reply brief, he moves this court to disregard the admission of exhibits filed by Losie a day after she filed her respondent's brief on March 30, 2022.

RAP 9.6(a) provides in relevant part that "[a]ny party may supplement the designation of clerk's papers and exhibits prior to or with the filing of the party's last brief. Thereafter, a party may supplement the designation only by order of the appellate court, upon motion." Losie did not make a motion but filed the following supplemental exhibits on April 1, 2022: Exhibits 191, 211, 213, 215, 309, 333, 335. Losie should have filed a motion to admit her exhibits. However, the rules of court are designed to "allow some flexibility in order to avoid harsh results," and substance is preferred over form. Weeks v. State Patrol, 96 Wn.2d 893, 895-96, 639 P.2d 732 (1982). Therefore, we deny the motion.

Where a party fails to challenge a finding of fact, these become verities on appeal. Id. In addition to assigning error to a challenged finding of fact, RAP 10.3(a)(4), a party must provide the court with argument as to why specific findings are not supported by the evidence. Buck Mountain Owner's Ass'n, 174 Wn. App. at 714. An appellant waives an argument raised for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We review any questions of law de novo. Casterline v. Roberts, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

Kaneen first challenges the trial court's finding that he breached his duty of diligence to act in a timely manner by not liquidating and distributing the Trust by at least July 1, 2018, six months after LaVerna died. Kaneen contends that the six-month period was arbitrary and an improper intervention of his discretionary powers. We disagree.

A trustee has significant discretionary authority to manage trust property. RCW 11.98.070. However, a trustee owes beneficiaries good faith, diligence, and undivided loyalty. In re Joanne K. Blankenship Survivor's Tr., 18 Wn. App. 2d 686, 700, 493 P.3d 751 (2021). A trustee is obligated to administer a trust in the interest of the beneficiaries and their powers are limited by the terms of the trust, common law, and statute. Cook v. Brateng, 158 Wn. App. 777, 785, 262 P.3d 1228 (2010). Where there may be differing interests between two or more beneficiaries, a trustee must act impartially in managing the trust assets. RCW 11.100.045; Blankenship, 18 Wn. App. 2d at 701.

We review interpretation of a trust de novo. In re Est. of Bernard, 182 Wn.

12

App. 692, 704, 332 P.3d 480 (2014). "In construing the terms of a trust, the settlor's intent controls. When possible, we determine the settlor's intent from the language of the trust instrument as a whole, giving effect to each part of the trust instrument." In re Washington Builders Ben. Tr., 173 Wn. App. 34, 75, 293 P.3d 1206 (2013) (citation omitted).

Kaneen maintains that it was improper for the trial court to find that he should have distributed the Trust assets by July 1, 2018.

A. Article 9.3

Kaneen claims that Trust Article 9.3 granted him the right to "marshal claims of the estate," which he interprets as the right to withhold Losie's distribution until she provided him with requested information.

Article 9.3 authorized Kaneen to "hold" and "distribute" "any debt, claim, refund, or rebate, premium, dividend, or other thing of value belonging to or accruing to such Trustor or his or her estate." Reading 9.3 in the context language of the Trust document as a whole, we do not interpret Article 9.3 to modify the mandatory directive in Article 4.5 that "[u]pon the death" of LaVerna, Kaneen was required to distribute the Trust to himself and Losie. The trial court found that any information Kaneen wished to have from his sister regarding property taken from their mother's house or travel expenses (of which Losie testified there were none) were unrelated to the Trust. Despite challenging the court's finding that Kaneen's requested information had no "nexus" to the Trust, he does not dispute that the house and the property within the house were non-Trust assets.

13

*B. Article 6.14*

Kaneen next claims that Article 6.14 of the third amendment authorized him to hold onto the Perth Mint certificates and by doing so he increased the value of the Trust.

Article 6.1 permitted the trustee with extensive authority to invest, purchase, and acquire various types of financial assets.[5]  But again, reading the Trust as a whole, this Trust provision did not modify Kaneen's obligation under Article 4.5 to distribute the Trust assets once LaVerna passed away.  Article 6.14 did not permit Kaneen to withhold Losie's share of the Trust simply because the certificates may have increased in value.

*C. RCW 11.40.051(1)(c)'s Two-Year Time Limit on Creditor Claims*

Kaneen asserts that the two-year time limit on creditor claims was a legitimate reason for him to have withheld Losie's trust distribution for two years.

On appeal, Kaneen does not assign error to trial court finding 10, which

---

[5] Article 6.1 addresses investments and provides:

> The Trustee has the power to invest and reinvest principal and income, to purchase or acquire therewith every kind of property, real, personal or mixed, wherever situated, and every kind of investment, specifically including, without limitation, shares in one or more mutual funds, in any common trust funds administered by the Trustee, corporate obligations of every kind, and stock, preferred or common, which men of prudence, discretion and intelligence acquire for their own account. The Trustee is further authorized to buy, sell and trade in securities of any nature, including options, short sales, or sale-on margin, commodities, futures, and Perth Mint Certificates. For such purpose, the Trustee may maintain and operate margin accounts with brokers, and may pledge any securities held, or purchased, by the Trustee with such brokers, as security for loans and advances made to the Trustee. All of the powers granted under this section shall be subject to the limitation that the Trustee shall not make any expenditures, investments, or elections which will, in any way, defeat, partially or wholly, the marital deduction granted under the Internal Revenue Code.

provides that all of LaVerna's creditors were paid in January 2018 and the Trust had no creditors. This finding becomes a verity on appeal. Endicott, 142 Wn. App. at 909. It was undisputed that Kaneen had been acting as trustee and power of attorney for nine months prior to LaVerna's death, and that LaVerna was unable to exercise control of her finances toward the end of her life. The trial court found Kaneen's reasoning for not timely distributing the funds not credible. Nothing in the record contradicts that finding.

*D. Consulting with Professionals*

Kaneen challenges the trial courts finding of fact 15:

Any legal and/or procedural questions related to the Trust could have easily been resolved by consulting with the attorney and/or CPA that the Trustor had previously retained. The Trustee's refusal to engage professionals (if needed) was unreasonable.

Though Kaneen does not address this challenged finding in his briefing, he refers to the record to note that he hired two CPAs and worked with various attorneys.

Although Kaneen may have discussed some of the issues with professionals, particularly after Losie filed her TEDRA petition, substantial evidence supports the trial court's finding that Kaneen did not seek help that was available despite needing help. Losie testified that although her mom had a CPA and an attorney, Kaneen did not want to pay the money to consult with them. She also testified that he "didn't want to hire anybody to help him" and instead resorted to reading hundreds of pages of material. She indicated that because he did not "understand anything" he spent hours doing research on his own. There is substantial evidence to support finding of fact 15.

15

Substantial evidence at trial supported the trial court's findings that in turn supported the court's conclusion of law that Kaneen violated the terms of the Trust—and thereby his duty of diligence—by withholding Losie's trust distribution for more than six months without a reasonable justification for doing so.[6]

Prejudgment Interest

Kaneen next contends that even if he did breach his fiduciary duty of diligence the trial court erred by awarding Losie 12 percent prejudgment interest. We agree.

The award of prejudgment interest is reviewed for abuse of discretion. Scoccolo Const., Inc. Curb One, Inc. v. City of Renton, 158 Wn.2d 506, 519, 145 P.3d 371 (2006) (citing Kiewit-Grice v. State, 77 Wn. App. 867, 872, 895 P.2d 6 (1995)). A trial court abuses its discretion when its decision "is manifestly unreasonable or based upon untenable grounds or reasons." Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)). A trial court's decision is manifestly unreasonable when it adopts a view that no reasonable person would take. Id. (citing In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)).

---

[6] Kaneen also assigns error to the trial court's finding of fact 9 and 16. Kaneen does not discuss these assignments of error in his briefing so we decline to review them. Buck Mountain Owner's Ass'n, 174 Wn. App. at 714.

Kaneen also assigns error to conclusion of law eight that "losses to the Trust were "sizable" and "preventable to some extent." A finding of fact incorrectly denominated as a conclusion of law is reviewed as a finding for substantial evidence. Prater v. City of Kent, 40 Wn. App. 639, 644, 699 P.2d 1248 (1985). This was not a conclusion of law, but a finding of fact that was tethered to the trial court's conclusion of law that Kaneen was not liable for any losses incurred while holding the investments. But again, Kaneen does not discuss this finding so we need not address it.

The trial court concluded that Losie was entitled to an award of prejudgment interest on the trust distribution withheld from her at the statutory rate of 12 percent under RCW 19.52.010 because the amount owing was a liquidated sum which made it possible to compute the amount owing without reliance on opinion or discretion, and the court decided that 6 months past LaVerna's death was the appropriate date at which to commence interest. Therefore, the court awarded interest on her share commencing on July 1, 2018 through December 2019. The court reasoned that, under RCW 11.98.085 and case law, Losie is entitled to recover the difference between the present value and the value that she would have had if the breach had not occurred.

RCW 11.98.085 provides,

(1) A trustee who commits a breach of trust is liable for the greater of:

(a) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or

(b) The profit the trustee made by reason of the breach.

Kaneen contends that RCW 11.98.085, by its plain language, does not allow for award of damages for loss of use. Losie concedes that, despite the court citing RCW 11.98.085, the court did not award damages for loss in value of the Trust or for profit made by Kaneen. Instead, she argues RCW 11.98.085 does not limit the court's authority to award damages in equity which is supported under Washington case law and RCW 19.52.010.

We review a question of statutory construction de novo. Abacus Fine Carpentry, LLC v. Wilson, 16 Wn. App. 2d 112, 116, 480 P.3d 433 (2021). When

interpreting a statute, we first look to its plain language. Est. of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009) (citing State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). "If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction." Id. Absent ambiguity or a statutory definition, this court gives the words in a statute their common and ordinary meaning. HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing Garrison v. State Nursing Bd., 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

If the statute remains subject to multiple interpretations after analyzing the plain language, it is ambiguous. Haselwood, 166 Wn.2d at 498 (citing Burton v. Lehman, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005)). A statute is ambiguous when it is "susceptible to two or more reasonable interpretations," but "a statute is not ambiguous merely because different interpretations are conceivable." Id. (quoting State v. Hahn, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)). "If the statutory language is susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." Id. (quoting Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

The plain language of the statute provides that Kaneen is liable for the greater of either the amount required to "restore the value" of the Trust to what it would have been had the breach not occurred, *or* the profit Kaneen made by reason of the breach. RCW 11.98.085. The term "restore" suggests that this

18

statute applies when there is a "loss" in value of the Trust because of the breach. Requiring the remedy to be the greater of restoring the loss value or the profit made by the person committing the breach prevents double recovery. By its plain language, the statute does not restrict the court from imposing an equitable remedy where a trustee unjustifiably withholds distributing funds as directed by the Trust.

The court and Losie are correct that courts have awarded damages to place the beneficiary in the position they would have been in if the trustee had properly administered the Trust. See Gillespie v. Seattle-First Nat'l Bank, 70 Wn. App. 150, 173, 855 P.2d 680 (1993); see also Baker Boyer Nat'l Bank v. Garver, 43 Wn. App. 673, 686, 719 P.2d 583 (1986).

In Gillespie, Seattle-First National Bank breached its fiduciary duty by mismanaging real estate properties for the Gillespie family's trust estate. 70 Wn. App. at 153. The trial court awarded the Gillespies damages equivalent to what the trust would have been if it had been properly managed, making them whole. Id. at 157. This court affirmed the award of damages stating that because breach of trust claims are equitable, the trial court may grant whatever relief it deems warranted and place the trust in the same position as if the trustee had never breached its fiduciary duties. Id. at 173. The court awarded damages for the duration of the breach at the rate of 4 percent interest based on the testimony of two expert witnesses and determined that 4 percent was an appropriate rate of appreciation. Id. at 176. The court reasoned that based on those expert opinions, the trial court was "able to establish lost appreciation with reasonable

19

certainty." Id.

In Baker Boyer, beneficiaries sued Baker Boyer National Bank, trustee, for breach of its fiduciary duties based on its failure to diversify the trust's holdings and for the unauthorized transfer of trust property. 43 Wn. App. at 675-76. The trial court awarded damages to the beneficiaries for this breach, but Division Three reversed, determining that the trial court should have considered the trust fund's lost appreciation in equity securities which would have been realized but for the failure to diversify. Id. at 686. The court considered expert testimony supporting that "the stock equity market, as measured by the broad stock indexes, rose approximately 20-22 percent during the trusts' administration." Id. The court computed the correct measure of damages and increased the beneficiaries' award to reflect the value of lost appreciation. Id.

Both the courts in Gillespie and Baker Boyer based their awards on evidence that supported a measurement of damages. The Gillespie court based its award on expert testimony and finding that "a conservative, adequately managed commercial real estate investment in the greater Seattle area would have yielded a four percent . . . per annum compounded return." Gillespie, 70 Wn. App. at 175. The Baker Boyer court considered the stock equity market as measured by the broad stock indexes during the trust's administration. Baker Boyer, 43 Wn. App. at 686.

In the instant case, the only testimony given at trial was from Kaneen and Losie. Losie did not present any evidence to support a conclusion that if Kaneen timely distributed the Trust, Losie's share of the Trust would have increased at a

20

rate of 12 percent per annum during the relevant time period. Instead, Losie simply submitted a request of prejudgment interest of 12 percent under RCW 19.52.010. However, "interest is not payable on a general legacy, but only on a specific monetary bequest." First Interstate Bank of Washington v. Lindberg, 49 Wn. App. 788, 800, 746 P.2d 333, 341 (1987) (recognizing that the beneficiary was eligible for "actual interest earned" because the trust expressly provided for a $150,000 cash distribution upon the death of both trustors). The Kaneen family trust did not provide for a specific monetary bequest, it provided for a general legacy, that "the remaining trust estate shall be distributed in equal shares" to their two children.

The court abused its discretion by imposing 12 percent prejudgment interest. We reverse and remand to strike the award of prejudgment interest. Because we reverse, we need not address whether the court abused its discretion in determining when the interest should begin.

### Judgment

Kaneen contends that the trial court made two mathematical errors in its judgment. Kaneen argues that the first error was the court failing to adjust for the previous trust distributions made to Losie. The second error was ordering Kaneen to reimburse Losie for the full $7,595 in 2018 tax penalty and 2019 taxes that had already been paid. We agree.

*A. Previous Trust Distributions*

Kaneen argues that in the trial court's final distribution calculation, the court erred in failing to equalize the shares and issued its judgment failing to

21

account for Losie receiving interim Trust distributions totaling $77,386.96 more than Kaneen. Article 4.5 of the Trust provides that the funds shall be distributed equally between Kaneen and Losie. Kaneen contends the court erred in simply splitting in half the remaining Trust balance of $94,000,[7] less $4,000 the trial court ordered for Kaneen's trustee fees.

In the judgment, the court calculated Losie's principal judgment amount as $47,722.55 along with attorney fees and costs of $112,349.41 for a total judgment of $160,071.96. The court ordered that Kaneen bear the entire cost of the 2019 taxes, tax preparation fees, and 2018 tax penalty totaling $7,595, and that the amount be deducted from the remainder of the Trust distribution owed to Kaneen. The court awarded Kaneen $4,000 in services to the Trust.

Prior to trial, the following distributions to Losie were posted from the Trust: $21,000 on April 17, 2018; $50,000 on February 11, 2019; $473,386 on January 9, 2020; total amount equaling $544,386. Additionally, a $467,000 distribution was posted to Kaneen on March 18, 2020. Thus, prior to entry of judgment, Losie received $77,386 more in distributions from the Trust than Kaneen.

Losie argues that the $21,000 was not a trust distribution because the funds originally came from LaVerna's BoA account. She does not address the other distributions. Regardless of whether the BoA funds should have been transferred into the Trust, Losie concedes that she and Kaneen equally shared

---

[7] At the time of entry of the judgment, the court used an approximation of the Trust balance based on testimony and the record and ordered that the parties adjust the calculations based on a current statement.

the funds in the BoA account.  Thus, the fact that some funds in the Trust came from the BoA account does not change the calculus that the money in the Trust must be distributed equally.

At the end of trial, the court subtracted $4,000 from the $94,000 trust balance to account for Kaneen's trustee services and ordered the remainder, $90,000, to be split equally without any reference to the previous trust distributions.

Because Losie had received $77,386 more than Kaneen, the court should have distributed that same amount to Kaneen prior to splitting the remaining balance.  Doing so would have left a balance of $12,614 to be divided equally so that each received $6,307.  Thus, before calculating offsets discussed below, of the remaining trust balance, Kaneen should have received $77,386 plus $6,307, totaling $83,693.

*B. Tax-Related Costs*

Kaneen also argues that the trial court erred in reducing his portion of the remaining trust distribution by the entire $7,595 in 2018 tax penalties and 2019 taxes and 2019 tax preparation fees that were already paid from the Trust.  Kaneen does not dispute that had he distributed the Trust within the time frame the court determined was reasonable, there would have been no 2018 tax penalty costs, 2019 taxes or 2019 tax preparation costs.  However, he is correct in that the court erred in reimbursing the entire amount to Losie.

Had the $7,595 not been unnecessarily expended, that balance would have remained in the Trust and been divided equally between Kaneen and Losie.

23

Thus, Kaneen's portion of the remaining balance should have been offset by $3,797.50, not $7,595. Kaneen does not dispute the court charged him $2,060, representing half of the 2018 federal and state income taxes paid that would not have been paid had he passed the Distributable Net Income or all taxable income to the beneficiaries. Thus, of his $83,693 Trust distribution owing, the court should have deducted $3,797.50 and $2,060, leaving a balance of $77,835.50. Accordingly, Losie's $6,307 distribution would increase by $3,797.50 plus $2,060, totaling $12,164.50.

Accordingly, the court abused its discretion in entering the judgment because the judgment violated LaVerna's directive that the Trust be divided equally and is thus based on untenable grounds.

Motion for Partial Reconsideration

Kaneen moved for partial reconsideration on the basis that the trial court erred by overlooking the fact that the Trust had previously distributed Losie $77,386.96 more than Kaneen, and incorrectly awarded 12 percent prejudgment interest. The court denied the motion for reconsideration without calling for a response.

We review the denial of a motion for reconsideration for abuse of discretion. Shanghai Com. Bank Ltd. v. Kung Da Chang, 189 Wn.2d 474, 479, 404 P.3d 62 (2017) (citing Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002)). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845

24

P.2d 1017 (1993).

For the reasons previously discussed, the trial court abused its discretion in denying the motion for partial reconsideration.

Attorney Fees

Kaneen contends that the court erred in awarding Losie attorney fees under RCW 11.96A.150. RCW 11.96A.150(1) provides the following:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

The standard of review for an award of attorney fees is abuse of discretion. Gabelein v. Diking Dist. No. 1 of Island County, 182 Wn. App. 217, 237, 328 P.3d 1008 (2014). Where the defendant has "breached [his] fiduciary duty plaintiffs should be granted their request to recover all attorney fees expended at both the trial and on appeal on behalf of the plaintiffs and all minor beneficiaries and unknown beneficiaries." Fred Hutchinson Cancer Rsch. Ctr. v. Holman, 107 Wn.2d 693, 717, 732 P.2d 974 (1987) (alteration in original) (citing Allard v. Pac. Nat. Bank, 99 Wn.2d 394, 407, 663 P.2d 104 (1983)).

Because we affirm the trial court's determination that Kaneen breached his duty to diligently distribute the Trust, the court did not abuse its discretion

because it had broad discretionary authority to award fees under RCW 11.96A.150(1).

Additionally, Kaneen and Losie both request attorney fees on appeal under RAP 18.1(a), which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review . . . ." As applicable law, Kaneen and Losie cite to RCW 11.96A.150. Though Kaneen prevails on the issues of prejudgment interest, error in judgment and the denial of the motion for partial reconsideration, Losie prevails as to the other issues on appeal. Thus, we decline to award either party attorney fees and costs.[8]

CONCLUSION

We affirm the trial court's finding that Kaneen, under the facts in this record, breached his duty to diligently distribute Losie's portion of the Trust. However, we hold that the trial court abused its discretion in denying the motion for partial reconsideration, reverse the judgment, and remand to the trial court to vacate the award of prejudgment interest and properly calculate the trust

---

[8] At the end of Kaneen's opening brief, he contends that the court should have awarded him $7,131 in out of pocket Trust expenses without any substantive argument or citation to the record or authority. In the court's findings and conclusions, it determined that "[Kaneen] is not entitled to reimbursement of costs that are undocumented, are unreasonable, or were not incurred during service as trustee." Because Kaneen did not provide adequate briefing, we decline to address this issue. RAP 10.3(a)(6); Cowiche, 118 Wn.2d at 809 (holding argument unsupported by reference to the record or citation to authority will not be considered).

26

distributions consistent with this opinion.

WE CONCUR:

Coburn, J.

Bırk, J.

Brennan, J.